## PITTSB. JUNC. R. CO. v. ALLEGH. V. R. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Submitted November 10, 1889.
Argued October 26, 1891—Decided January 4, 1892.
[To be reported.]

1. A railroad company, incorporated under the acts of February 19, 1849, P. L. 79, and April 4, 1868, P. L. 62, cannot appropriate for its road a part of the yard of another company reasonably necessary for the corporate purposes of the latter, merely for the sake of convenience, or to save expense, and in the absence of any actual necessity for such appropriation.

2. In the present case, it being found that a proposed construction of plaintiff company's road across defendant company's yard, upon an elevated structure occupying but a trifling part of the yard, would cause comparatively little injury, easily compensated in damages, and was absolutely necessary, plaintiff's right to effect such crossing was sustained and enforced.

3. Railroad corporations, being created to serve the public, must submit to slight inconveniences where the public interests are concerned, especially when compensation can be made in damages. Their franchises, like other property, may be taken by eminent domain, where a necessity for such taking exists: Pittsb. Junc. R. Co.'s App., 122 Pa. 511; Sharon Ry. Co.'s App., 122 Pa. 533; Groff's App., 128 Pa. 621, distinguished.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 224 October Term 1890, Sup. Ct.; court below, No. 454 January Term 1888, C. P. No. 2.

On December 22, 1887, the Pittsburgh Junction Railroad Company filed a bill in equity against the Allegheny Valley

Railroad Company, and W. H. Barnes and John Scott, receivers thereof.   The bill averred in substance:

That the plaintiff, having lawful authority to construct branches from its main line of railroad, had located a right of way for a branch railroad, twenty feet in width, along the south bank of the Allegheny river, over certain lands claimed as the property of the Allegheny Valley Railroad Co., and had endeavored to agree with the defendants as to the damages accrued or likely to accrue by reason thereof, but the defendants had refused to agree with the plaintiff with respect thereto, and denied its right to appropriate the right of way aforesaid; that the plaintiff had tendered the defendants a bond with sufficient sureties in twenty thousand dollars, to secure such damages, which was refused, and thereupon the plaintiff had filed the same in the court below, with a petition for its approval, and was ready and willing to pay the defendants such compensation as they might be entitled to receive.   The nature and purposes of the right of way proposed to be appropriated were thus specified in the bill:

" That the right of way so described is appropriated for the construction of said branch railroad over the same, only in the manner and to the extent following, to wit: Said road over said lands shall be constructed as an iron-trestle or bridge work, so as to give not less than nineteen feet ten inches clear height above the surface of said ground, and to be supported thus by iron pillars longitudinally distant not less than twenty-nine feet from each other across said lands; the distance from outside to outside of said pillars measured sectionally to be sixteen feet, except at point of crossing tracks of the Allegheny Valley railroad, now constructed, and the clear distance inside of said pillars to be fourteen feet, except as above; said iron columns to rest upon masonry sunk underneath the surface of said ground; the space under each elevated road, to be constructed as aforesaid, to be left open and otherwise unobstructed, so as to allow free passage of locomotives and cars underneath the same; the appropriation hereby made to be only of the right to construct and maintain the said branch railroad herein described, and to interfere to no further extent with the rights of property of the said Allegheny Valley Railroad Company."

The bill prayed for a decree declaring the plaintiff's right to

Master's Report.

appropriate such right of way, and to construct and maintain said branch railroad thereon in the manner specified; for an injunction restraining the defendants from interfering therewith; and for general relief.

The defendants filed an answer averring that the whole of the property in question was owned by the Allegheny Valley Railroad Co., was acquired and held by it exclusively for railroad purposes, and was absolutely indispensable therefor; and denying the legal right of the plaintiff to appropriate a right of way over it. The defendants also filed a cross-bill praying for an injunction to restrain the plaintiff from making such appropriation.

The cross-bill having been answered and issue joined, the cause was referred to *Mr. Marcus A. Woodward*, as examiner and master, who, on February 8, 1890, filed a report showing the following

FINDINGS OF FACT:

1. That the Pittsburgh Junction Railroad Co. is a corporation duly formed under articles of incorporation, dated September 27, 1880, of the Pittsburgh Local Railroad Co., and of the articles of incorporation, dated August 6, 1881, of the Pittsburgh Junction Railroad Co., by virtue of articles of consolidation of said two companies, filed in the office of the secretary of the commonwealth, December 9, 1881, by which the plaintiff was authorized to construct a railroad from Bennett station, on the Pittsburgh & Western railroad to Laughlin station, on the Pittsburgh & Connellsville railroad, in Allegheny county, and a railroad from a point in the Ninth ward in the city of Pittsburgh, along the south bank of the Allegheny river to the Monongahela river, etc.; in which charter of consolidation is a provision for the construction of a branch road, from the main line of the said Pittsburgh Local Railroad Co., at Sixteenth street, eastward along the south bank of the Allegheny river to Negley's run, by which the two consolidated railroads would form a connection on said south bank of said Allegheny river. And the said branch road from Sixteenth to Thirty-third street, and said Local railroad, from Eleventh to Sixteenth street, covers the same ground and right-of-way as the branch road · described in the second paragraph of the plaintiff's bill.

Master's Report.

2. That, under said charter, the Pittsburgh Junction Railroad Co. constructed and has in operation, its road from Laughlin station, on the Pittsburgh & Connellsville railroad, to Bennett station, on the Pittsburgh & Western railroad; and has constructed, and has in operation, upon the said line of the Pittsburgh Local railroad location, a road from Sixteenth street to Eleventh and Ninth streets in the city of Pittsburgh, along the bank of the Allegheny river, and has constructed, and has in operation, said branch road from the main line of the Pittsburgh Junction railroad at Thirty-third street to Twentieth street.

3. That, in August and September, 1887, the said junction railroad company caused to be marked, surveyed and located, a branch road along the Allegheny river, over the freight yard of the Allegheny Valley Railroad Co., from Twentieth street to Sixteenth street, for the construction of an elevated road carried upon iron pillars over the said freight yard, as described in the third paragraph of the plaintiff's bill, and upon exhibits Nos. 1, 2, 3, of the plaintiff's, and defendants' plan exhibit No. 1, for the purpose of the construction and completion, by means of the said location and the construction of the elevated road proposed, of its road to Eleventh and Ninth streets, at the Allegheny river.

4. That the amount of ground taken, for all the pillars, supporting the plaintiff's elevated road through said yard, from Sixteenth street to Twentieth street, is eighty-two square feet; and the amount of ground taken, adjoining the bridge over the Allegheny river at Sixteenth street, and between the abutment and the first pier, for a pier for said elevated road, is one hundred and seventy-six square feet; making the quantity of ground taken altogether about sixteen feet square.

5. That, at the time of the said location, there was only one end of a yard track on the Sixteenth-street side of the defendants' yard, the operation of which was interfered with by said location, and this could have been easily remedied and without any considerable expense, by moving the end of said track very slightly towards the Allegheny river, and without any injury thereto in respect of its capacity or usefulness; and since said location, the said interfering track, and the end thereof, have been moved, so as to more materially interfere

with the location of the pillars of the said elevated structure, and another track, with a switch connection therefrom, has been placed so as also to interfere by being too close to the pillars as located of the said structure, but all of which, by slight changes, without any injury and at slight expense, can be changed so as to accommodate the location made by the plaintiff : and otherwise there are now no improvements in or use of the said yard, which are any obstacle to the construction of the said elevated road, as designed.

6. That the object of the construction by the plaintiff, as proposed, over the defendants' yard, of said elevated road, is to reach Eleventh and Ninth streets, and furnish a point and yard for the receipt and delivery of the freight business of the city of Pittsburgh at Ninth street, and to reach the numerous and extensive manufactories along the bank of the Allegheny river, between Thirty-third street and Ninth street, with a direct railroad connection from the main line of the plaintiff's road on Thirty-third street, for delivering and receiving and handling the freight of said manufactories, which is of very great amount, by furnishing direct facilities thereto, at the doors and within the shops of said manufactories.

7. That the two roads forming the consolidated road of the plaintiff, were organized and chartered especially for the purpose, above all others, of receiving and handling freight between the different railroads and from and to them, direct to the manufactories and business houses of the city of Pittsburgh : And this branch road is of very [great importance to the public, and directly to the great business mills and places along the river on its line ; and is particularly necessary to the plaintiff's road, to enable it to fulfil the special objects of its existence and incorporation; and its importance to each of these interests is so enormously out of all proportion to any injury possible to the defendants by the construction proposed, that there is no kind of comparison between them.]

8. The land taken for the pillars and the pier of the said plaintiff's proposed structure, is taken into the exclusive use and occupation of the plaintiff. [This road goes through the defendants' extensive freight yard at its least valuable part, and in such a way as to take but a trifle of the defendants' land, and so as not to any considerable degree, restrict or embarrass any of

the defendants' use or enjoyment, now or in the future, of said yard, for any of the purposes to which it is applied, or for which it is held.]

9. [The occupation of the yard as proposed, will cause some inconvenience and interference with the defendants' operation and use of the yard, but not to any considerable or serious degree, nor lessen to any appreciable extent the capacity of its accommodation for the defendant's uses. It takes no part of the defendant company's franchises, and only interferes with their exercise to the extent stated.]

10. [The entire injury to the defendants would comparatively be inconsiderable, and could be easily compensated for in damages.]

11. [The plaintiff cannot, by any other route whatsoever, reach its terminus at Eleventh and Ninth streets, or in any other way consummate the connection required by the purposes of its consolidation.] *

12. The defendants acquired the title to the said yard, for the corporate uses and purposes to which the main part of the yard has been applied, to wit, as a place for delivering and receiving freight, and as incident thereto, the standing of cars and making up of trains; the space being required chiefly for trackage, together with driveways for wagons handling freight, and in part occupied, also, with a freight house, a crane for handling heavy weights, and scales.

13. The entire space of the yard will undoubtedly, in the not very distant future, become fully occupied with the business to which it is now devoted.

14. The occupation of the defendants' yard, as proposed by the plaintiff, will not, however, appreciably hasten the time when said yard will become occupied as aforesaid, and it cannot interfere at all with the general business and operations of the defendants' road.

—After finding the foregoing facts, the master, citing and discussing: Pittsb. Junc. R. Co.'s App., 122 Pa. 511; † Sharon

---

* The portions of the findings, supra, enclosed in [ ], are transferred from the master's discussion of the law.

† The case in 122 Pa. 511, related to the proposed construction of the same branch railroad through the Forty-third street yard of the Allegheny Valley Railroad Co.; in the present case, the property to which the controversy related was the Sixteenth-street yard of that company.

Ry Co.'s App., 122 Pa. 533 ; Penna. R. Co.'s App., 93 Pa. 150 ; Lake Shore etc. Ry. Co. v. Railroad Co., 8 Fed. R. 858 ; Lewis on Em. Dom., § 267 ; Chicago etc. Ry. Co. v. Railway Co., 112 Ill. 599 ; New York etc. R. Co. v. Railroad Co., 36 Conn. 196 ; North Carolina etc. R. Co. v. Railway Co., 83 N. C. 489 ; Western Penna. R. Co.'s App., 99 Pa. 163 ; Groff's App., 128 Pa. 621 ; Thatcher v. Dartmouth Bridge, 18 Pick. 501, reported the following

CONCLUSIONS OF LAW :

1. That there is and ought to be recognized, a plain distinction between the uses to which corporate property is being applied when it is sought to be appropriated by another company, as is laid down in the Lake Shore etc. Ry. Co. v. Railroad Co., supra, and other cases cited.

2. That there is a distinction so plain, between the taking of property of a corporation which would disable or destroy or seriously interfere with its general operations, and a taking which but slightly injures it, and can be readily and fully compensated in damages, that there is no likeness between them.

3. That there is no sound distinction between the exercise of the power of eminent domain, for building a branch road and the main line.

4. And that any restrictions upon the exercise in such cases of the power of eminent domain, must be made in regard to the public welfare as the paramount consideration.

—Further reporting that the charter of consolidation by which the plaintiff company was formed, expressly provided for a line along the Allegheny river extending from the main line of the Pittsburgh Local Railroad Co., to and beyond the main line of the junction road at Thirty-third street, and this feature of the case avoided all objections made by the defendants under the authorities referred to in the report, "save the most manifestly untenable of all, that in no case can one company take another's land;" and that the cross-bill could not in any event be sustained, as the decision of the original bill would necessarily settle all that was claimed by the plaintiff, the master recommended a decree dismissing the defendants' cross-bill, sustaining the plaintiff's bill, and granting the relief therein prayed for.

Opinion of Court below.

The defendants filed thirty-three exceptions to the findings, conclusions, and recommendations of the master. These exceptions having been overruled by the master and argued before the court, the following opinion and decree were filed, on September 20, 1890, EWING, P. J.:

In his findings of fact, the master is sustained by the testimony. If, on this part of the case, any party has good ground for complaint, it is not the defendants. The occupation of the defendants' yard, as proposed by the plaintiff, would not materially interfere with the operations of their road or business. The inconvenience would be very slight, compared with the large public interests involved in the construction of the plaintiff's proposed road. It is very different from a track at grade with the yard tracks.

As to the question of law, we certainly cannot say that the master is wrong. The principles that he lays down and the rules that he applies, and his conclusions thereon, seem to us to be correct, unless they are found to be in conflict with express decisions of our own Supreme Court. It is claimed that the cases of Pittsb. Junc. R. Co.'s App., 122 Pa. 511, and Sharon Ry. Co.'s App., 122 Pa. 533, are in direct conflict with the ruling of the master. It seems to us that the master has shown satisfactorily that they are not in conflict with the points decided in those cases. That there are dicta in the opinions in those cases, which taken alone would lead to a different conclusion, is conceded. We would be very unwilling to show even a seeming disregard for deliberately expressed opinions of the Supreme Court, or any judge thereof; but, in writing an opinion in any given case, a judge (at least a judge in the lower court) not infrequently, inadvertently states as a general proposition that which is entirely correct, in regard to the state of facts of the case he is discussing, which he afterwards finds to be incorrect and inapplicable to a case with different facts as a basis. It seems to us to be at least as respectful to the Supreme Court, where apparently such a dictum has been given, to take all their utterances on the subject into consideration, and on this broader view determine what is the real rule to be drawn from their decisions and discussions, than to assume that they will necessarily adhere to what may have been intended to apply merely to the special facts of the particular case under consideration.

The elaborate report of the master renders it unnecessary for us to enter into further discussion of the case.

And now, to wit, this twenty-second day of September, 1890, this cause came on to be heard upon the exceptions to the report of the examiner and master, and after argument by counsel and upon consideration thereof, the exceptions are dismissed, and it is ordered, adjudged and decreed as follows, to wit:

1. That the Pittsburgh Junction Railroad Co., a corporation plaintiff in the original bill, in the proper exercise of the right of eminent domain in it existing, is lawfully possessed of the legal right and authority to enter upon and appropriate, in the manner provided by the statutes constituting the charter of the said corporation, the easement or right-of-way over and upon the land of the Allegheny Valley Railroad Co., a corporation defendant in said bill mentioned and described, upon the location, to the extent, and in the manner in said bill described, and to construct, maintain and operate thereon its railroad, for the purpose and in the manner set forth and described in said bill; provided, that said plaintiff shall first make just compensation to the defendants for all damages which they may sustain by reason thereof, or give adequate security therefor to be approved by this court, in such form and manner as directed by the statutes in such case made and provided.

2. That upon the said plaintiff making just compensation to the defendants for all damages which the defendants may sustain by reason of such appropriation, or giving adequate security therefor, to be approved by this court, as directed by the statutes in such case made and provided, the writ of injunction do at once issue under the seal of this court, enjoining and restraining the said defendants, their officers, agents and servants, from forbidding, hindering, delaying, or in any way interfering with the said plaintiff in its entering upon said property of the defendants within the right of way in said bill described, and constructing, maintaining and operating its said railroad over and upon the same, in the form and manner in said bill set forth.

3. Be it further adjudged, ordered and decreed that the cross-bill, herein filed, be and the same is hereby dismissed at the costs of the plaintiffs therein.

4. The fee of the examiner and master is hereby fixed at the

Arguments.

sum of one thousand dollars, to be paid by complainant and to be taxed with the other costs of this case.

5. That the costs of this suit be paid by the defendant in the original bill, except the master's fee.

—Thereupon the defendants took this appeal, specifying inter alia, that the court erred:

22. In not dismissing the original bill.

23. In not granting an injunction as prayed in the cross-bill.

24. In entering a decree the form of which was "in violation of Rule XIV, § 78, of the Equity Rules, in that the decree, of itself, does not set forth and define the rights or relief to which the court held the plaintiff to be entitled, but for the ascertainment of the terms and effect thereof involves a reference to the plaintiff's original bill."

On November 10, 1890, the case was submitted on briefs, without oral argument, by *Mr. John H. Hampton*, *Mr. William Scott*, *Mr. George B. Gordon*, and *Mr. William R. Blair*, for the appellants, and *Mr. George Shiras, Jr.*, and *Mr. Johns McCleave*, for the appellee. On January 5, 1891, the following order was filed.

PER CURIAM:

The above case was submitted in the closing hours of the last term in the Western District. An examination of the paperbooks satisfies us that there ought to be an oral argument. The case is accordingly ordered upon the list for that purpose.

*Mr. William Scott* (with him *Mr. George B. Gordon* and *Mr. William R. Blair*), for the appellants:

The questions involved in this case have been distinctly and expressly ruled by this court in Pittsb. Junc. R. Co.'s App., 122 Pa. 511, and Sharon Ry. Co.'s App., 122 Pa. 533. Many of the findings of the master and court below are unwarranted and erroneous; but, even upon the facts found, the case is ruled by the decisions just cited, which were recognized and followed in Groff's App., 128 Pa. 621. The present case is, in reality, an attempt by the appellee to again try the case first mentioned. The logical result of the master's theory would be to subject older franchises to destruction, " on a mere pretence, in fact at the will of the holder of the latest franchise : " Penna. R. Co.'s App., 93 Pa. 150.

*Mr. Johns McCleave* and *Mr. George Shiras, Jr.*, for the appellee:

The decision in Pittsb. Junc. R. Co.'s App., 122 Pa. 511, proceeded upon the technical ground that the case had "drifted from its moorings," and Sharon Ry. Co.'s App., so much relied on by appellants, went off on precisely the same ground. These cases do not rule the present one, both for this reason and because the facts found by the master are quite different from those found in the two cases mentioned. Streets and corporate property have time and again been taken for branch railroads: Pittsburgh v. Railroad Co., 48 Pa. 355; Cleveland etc. R. Co. v. Speer, 56 Pa. 325; Black v. Railroad Co., 58 Pa. 249; West. Penna. R. Co.'s App., 99 Pa. 155; McAboy's App., 107 Pa. 548; Volmer's App., 115 Pa. 166; Penna. R. Co.'s App., 116 Pa. 55. The mere fact that a railroad corporation owns the land proposed to be taken, is not enough to exempt it from appropriation by virtue of a charter granting such general powers as are specified in the act of February 19, 1849, P. L. 79; it must be shown that such appropriation would "wholly or in a great degree defeat" the prior public use: Boston Water P. Co. v. Railroad Co., 23 Pick. 360; Springfield v. Railroad Co., 4 Cush. 63; Packer v. Railroad Co., 19 Pa. 211; Penna. R. Co.'s App., 93 Pa. 150; Commonwealth v. Railroad Co., 27 Pa. 354; Cleveland etc. R. Co. v. Speer, 56 Pa. 332; Phila. etc. R. Co. v. Philadelphia, 9 Phila. 563; Plan of Kensington, 2 R. 445.

OPINION, MR. CHIEF JUSTICE PAXSON:

This case is not ruled, as was urged by the learned counsel for the appellants, by Pittsb. Junc. R. Co.'s App., 122 Pa. 511; Sharon R. Co.'s App. 122 Pa. 533; and Groff's App., 128 Pa. 621.

The case first cited was that of a grade crossing, run mad. In other words, it was an attempt, under the act of June 19, 1871, P. L. 1361, relating to grade crossings, not to make a grade crossing proper, but to occupy the yard of the Allegheny Valley Railroad Company with its tracks, to the serious injury of the rights and property of the latter company. Upon this point, the court below in that case found: "Upon the whole, then, I am of opinion that the defendant has failed to show that

either the so-called 'original' location or the one proposed by the master, will not take ground and destroy structures reasonably necessary for the future wants of plaintiff for proper railroad purposes.   That the defendant can reach Negley's run, the proposed terminus, without going through plaintiff's yard, as a mere question of engineering, can admit of no doubt."   In that case, the fact was patent that the appellant company desired to run through the yard of the other company, because it was less expensive to do so than to adopt another route.   While competition is to be encouraged, vested rights are not to be needlessly sacrificed.

Sharon R. Co.'s Appeal is upon all fours with the case above referred to.   It was also an attempt to appropriate a considerable portion of appellant's yard under the pretence of a grade crossing.   This we held could not be done, under the authority of Pittsb. Junc. R. Co.'s Appeal.   In Groff's App., 128 Pa. 621, this court held that a turnpike company could not occupy a public highway, although it was the only practicable route between the termini.   That, however, was not the case of one corporation taking the franchises of another corporation, and I do not see its application to the case in hand.   It is referred to because it was cited as sustaining appellant's position.

In the case in hand, the appellee seeks to cross appellants' yard, not at grade, but by an elevated road which will occupy no portion of the yard except for its necessary supports.   That it will occasion some inconvenience to the appellants is probable, but for that it can be compensated in damages.   It will certainly do them less injury than by any other form.   While vested rights are to be sacredly guarded, the public interests must not be overlooked, and nothing in the way of mere obstruction can be permitted to interfere with the public convenience.   In the present case, we have the facts found by the master and approved by the court as follows :

" This road goes through the defendants' extensive freight-yard at its least valuable part, and in such a way as to take but a trifle of the defendants' land, and so as not to any considerable degree, restrict or embarrass any of the defendants' use or enjoyment, now or in the future, of said yard, for any of the purposes to which it is applied, or for which it is held."

" The occupation of the yard as proposed will cause some in-

convenience and interference with the defendants operation and use of the yard, but not to any considerable or serious degree, nor lessen to any appreciable extent the capacity of its accommodation for the defendants' use." "The entire injury to the defendants would comparatively be inconsiderable, and could be easily compensated for in damages." "The plaintiff cannot, by any other route whatsoever, reach its terminus at Eleventh and Ninth streets."

These findings were fully sustained by the court below as warranted by the evidence. Giving to them the weight of a verdict, it will readily be seen how entirely this case differs from those cited. Railroad corporations are the creatures of the public, and were created to serve the public in the matter of transportation of freight and passengers. It is not too much to require them to submit to a slight inconvenience where the public interests are concerned, especially where such inconveniences can be compensated in damages. Their franchises, like other property, may be taken by the public for the public welfare, where there exists a necessity for such taking. We have interfered repeatedly where such an attempt has been made without any actual necessity therefor. In the case in hand, we think such necessity does exist, and the slight inconvenience to the appellant company must yield to the public good.

The law as applicable to this case has been discussed so fully and so recently that we need not repeat it here.

> The decree is affirmed, and the appeal dismissed, at the costs of the appellants.