NATIONAL DOCKS AND NEW JERSEY JUNCTION CONNECT-
ING RAILWAY COMPANY, PLAINTIFFS IN ERROR, v.
PENNSYLVANIA RAILROAD COMPANY ET AL., DEFEND-
ANTS IN ERROR.

1. In a proceeding to condemn a right to cross defendant's tracks below
the grade thereof, evidence that, after the construction of the crossing,
defendant, if it wished to place more tracks on the part of its right of
way not yet utilized, would have to build abutments and bridges which
would not be necessary were it not for the crossing, was admissible.
2. If the cost of the abutments and bridges, or any less expensive mode
of making such vacant strip available after the taking, was more than
the land would be worth when so redeemed, plaintiff was entitled to
its value when redeemed, less the cost of redeeming if the crossing
was not taken ; but if the cost of utilizing the strip after the taking
would not exceed its value when made available, the measure of
damages was the difference between the cost of such mode of re-
deeming it as must be resorted to after the taking, and the cost of
redeeming it before the taking, if the former would exceed the latter.

On error to the Circuit Court of Hudson county.

Proceeding by the National Docks and New Jersey Junc-
tion Connecting Railway Company against the Pennsylvania
Railroad Company and another to condemn certain property
for railway uses.   Judgment for plaintiff.

Argued at June Term, 1894, before BEASLEY, CHIEF
JUSTICE, and Justices DEPUE, VAN SYCKEL and LIP-
PINCOTT.

For the plaintiffs in error, *Joseph D. Bedle* and *James B.
Vredenburgh.*

For the defendants in error, *John R. Emery* and *Collins &
Corbin.*

VAN SYCKEL, J.   On the trial below, the plaintiffs in
error offered evidence to show the cost of building abutments
and bridges necessary to make the green strip available for

266    NEW JERSEY SUPREME COURT.

National Docks Ry. Co. v. Penna. R. R. Co.    *57 N. J. L.*

additional tracks or other uses. This evidence was excluded and an exception taken, upon which error is assigned.

From the evidence and exhibit in the cause, the jury had a right to find that this strip of land could not be made available for beneficial use by the Pennsylvania company without filling it up to the grade of existing tracks. Before the crossing by the National Docks, earth-filling was only necessary. After the crossing is taken, it will be necessary to construct abutments and bridges to retain the earth-filling, which would otherwise fall upon the tracks to be constructed by the National Docks, and obstruct their use. In the judgment of this court, the evidence offered and overruled was competent and necessary to enable the jury to estimate the damages sustained by the Pennsylvania company by the crossing of that strip by the National Docks road. It was a question of fact for the jury to settle, what the value of that strip was to the Pennsylvania company for any purpose to which it might lawfully and reasonably appropriate it. If the jury should find that the cost of constructing abutments and bridges, or the cost of any less expensive mode which might be devised in order to utilize the said strip after the taking, was in excess of the value of the strip after such redemption, then the jury should say that any such mode of attempting to redeem and appropriate the said strip is unreasonable, and should not be resorted to. The consequence of such a finding would be that the said strip of land would be rendered comparatively valueless when the crossing is completed, because it would cost more to make it available to the Pennsylvania company than it is worth. In that case the Pennsylvania company would be entitled to the value of the strip when redeemed, less the cost of redeeming it, if the crossing was not taken. But if the cost of abutments and bridges, or some other effective but less expensive mode of utilizing the strip after the taking, did not exceed the value of the strip after it is redeemed, then the Pennsylvania company would be entitled to the difference between the cost of such mode of redeeming it as must be resorted to after the taking and the cost of redeeming it before the

taking, if the former exceeds the latter. The least expensive mode of effecting the redemption must be taken into account. In this view the evidence offered was competent, and it should have been received and submitted to the jury with proper instructions. If the strip, provided no crossing was taken by the National Docks road, would be more valuable without filling up (taking into account the cost of filling), then the question would be what the value is, and whether by the taking that value was impaired, and to what extent. In such case the cost of filling and of abutments and bridges would not enter into the computation. All these are questions of fact to be submitted to the jury. The rejection of the evidence offered was erroneous, and the judgment below should therefore be reversed.

LIPPINCOTT, J. (dissenting). I am constrained to dissent from my brethren constituting the majority of the court, in the conclusion that the judgment in the Hudson County Circuit Court should be reversed.

The exceptions under review were taken on the trial of an appeal in a condemnation proceeding brought by the defendant in error, a railroad company, to acquire a route across the route and lands of the plaintiffs in error, other railroad companies, the crossing being made under the grade of the existing tracks of the older company.

A great number of exceptions were taken to the manner of framing the issue for the trial of the controversy, on the appeal from the award of the commissioners, to the amendments thereto, and during the trial of the same. The only exceptions to rulings deemed worthy of discussion and determination are those set forth in the eighth and ninth assignments of error. To properly understand these rulings, the evidence in the case and the purpose of the offer of the testimony excluded must be carefully considered. For convenience, the railway company prosecuting the condemnation, which is the defendant in error, may be designated as the Connecting company, and the two railroad companies, own-

268     NEW JERSEY SUPREME COURT.

National Docks Ry. Co. v. Penna. R. R. Co.     57 *N. J. L.*

ing, as lessor and lessee, who are plaintiffs in error, may be designated as the Pennsylvania Railroad Company.

A part of the property taken was a crossing under grade of a number of yard tracks, and also under the tracks of the Pennsylvania company, on one of its filed routes in Jersey City, called the main passenger route. It was contended on the trial by the Connecting company, that the authorized width of this route was only sixty-six feet, but it was determined by the trial court that the width was one hundred feet (*Pamph. L.* 1830, *p.* 86; *Pamph. L.* 1868, *p.* 1030; *Pamph. L.* 1872, *p.* 567), and that, at the point of crossing, the Pennsylvania company held the width of one hundred feet, beside other lands on either side. At the point of crossing there are three tracks on this located width; the two northerly ones are used as the tracks of the main passenger line of the Pennsylvania company, and the southerly track of the three is used in connection with the large adjoining parcel of land owned by the said company as a part of their passenger car yard. The two main passenger tracks are located, one on each side of the centre line of the located route, and all of the three tracks cross over the route of the Connecting company on an iron girder bridge resting on stone abutments thirty feet apart, constructed by the Pennsylvania company in the year 1887. The trial court allowed the owning company to prove the cost of these abutments and bridge and the costs of these permanent maintenances, and directed the jury to include their value in the award of damages. Another offer was made by the Pennsylvania company. The proof was that, on their route at the place of crossing, there was room for more tracks, on both sides of these tracks, than there constructed, and that two more tracks could be laid on the route north of those already constructed upon it. In order to construct these two tracks to the north and on the same level, it would only be necessary for the Pennsylvania company, under present conditions, to make an embankment across the route of the Connecting company; that the taking of the under-grade crossing by that company

would change existing conditions so that it would be neces-
sary for the Pennsylvania company, if they should ever build
such tracks at the same location and elevation, to build
bridges to carry those two additional over the route of the
Connecting company. Upon these facts, substantially, the
Pennsylvania company, at the trial, contended that they were
entitled to recover, as part of their damages, the cost, to be
now estimated, of the erection of such bridge and abutments,
for two tracks, which they lawfully could and possibly might
place at that location, less the cost of raising the embankment
there, which would be an expense necessary under existing
conditions. The offer was stated in these terms by counsel
of plaintiffs in error : " I offer to prove the cost of construc-
tion of such additional abutments as would be necessary to
accommodate two additional passenger tracks to the north of
the present tracks." This was followed by an offer to prove
the cost of filling the same space so as to support such two
tracks, as follows : " The offer is made upon the idea that the
only way of ascertaining what the damage is and what the
value of the land is, is by ascertaining the difference between
what it would cost to build the bridge there and what it
would cost to fill it up, the idea being that if that other road
was not underneath us we would fill it up instead of building
a bridge there."

These offers were distinctly presented as the measure of
damages, and not to show the capabilities of the property.
The argument of counsel at the trial as it appears in the record
demonstrates this. It is clearly stated to be that, " If they
[the Connecting company] did not build their road we could
get all the rails which the law allows us to put on that high-
way without building any abutments, and therefore the
damage we suffer is the difference between what it would cost
to put the rails there without building an abutment, and what
it would cost to put them there when we have to build an
abutment." The trial court so understood it, for in ruling
upon this offer of the cost of the abutment, the court said,
" it is offered here as an element of damage to be included in

the verdict of the jury," and it was not then nor at any time afterward questioned that such was the purpose of the offer upon which the court was called to rule.

The testimony as to the estimated cost of these abutments was rejected. The trial court said, substantially, that there was no duty on the part of the Pennsylvania company to construct these two additional tracks; that it could not be contended that such use of the land was more than a future possible use; that if, from the facts in evidence, one might just as fairly conclude with as strong a probability that these lands would not be used for the two additional tracks, but for other railroad uses, which might very materially change the character and cost of construction, that no evident necessity existed for two more tracks at that point, and that the necessity might never arise.

It is then evident that the offer was made on the trial as a definite measure of damages, and that it was ruled upon in that aspect, and rejected as not competent for that purpose, and it cannot be presented on error as competent for other purposes not stated to the court at the time of trial.

In the case of *Delaware, Lackawanna and Western Railroad Co.* v. *Dailey*, 8 *Vroom* 526, in the Court of Errors and Appeals, Mr. Justice Van Syckel, delivering the opinion of the court, said: " It is the well-settled rule that a party shall not be heard in an appellate court upon a point not taken, or a matter not raised and considered in the court below. The point specifically made was properly decided, and the court cannot say that if the evidence had been offered for any legal purpose it would have been rejected. The result is in harmony with many cases which have been adjudged in this court and in the Supreme Court," citing many cases.

The rejection of these estimates has been assigned for error, and a majority of the court hold that the estimates should have been admitted, and that the rejection was error. I cannot agree with that view.

How far possible future uses of land taken may be considered in condemnation cases is a matter which must, to a

very great extent, be left to the discretion of the trial judge, for the manifest reason that the number of such possible uses is endless. The future possible use to which the land might be devoted and the cost of preparing it for such use, was not the issue which was framed for the trial of the controversy. Mr. Justice Depue, in the case of *Schenck* v. *Griffin*, 9 *Vroom* 462, 471, in the Court of Errors and Appeals, said : " The cardinal rule in the trial of causes is that the evidence shall be confined to the issues made by the parties. An adherence to this rule is of great practical importance in trials by jury. In almost every case of controverted facts, an infinite variety of extraneous circumstances may be suggested, which may bear remotely upon the issues involved or upon the credibility of witnesses. The admission of the proof of such circumstances must be left to the discretion of the judge, otherwise the jury might be confused by the multitude of collateral issues, tending to a miscarriage of the cause and the trial expanded to an unreasonable extent." See, also, *Providence, &c., Railroad Co.* v. *Worcester*, 155 *Mass.* 35, 41.

While it may be said that the trial court is bound to admit evidence showing or tending to show the availability of the property for valuable uses, it is quite another thing to admit evidence as to the cost of some particular erection said to be necessary to adapt the land to such uses. The cost of restoration for an existing use stands upon an entirely different principle from the cost of creating a future use. The cost of restoring an existing use of land damaged by the taking may be proved in certain cases. Where it is apparent that the cost of restoring the existing use must be less than the damages otherwise sustained, such cost should be provable on the principle that a party should not recover avoidable damages. If a part of a house be taken, the damages might be the full value of the building, if not restored, but with such restoration the damage might be small ; in such case the cost of restoration would be the fair measure of damages. Sedgwick aptly illustrates this doctrine as follows : " If all the windows of a house should be broken, the measure of damages

would be the cost of putting in new windows, not the loss resulting from leaving it permanently without windows." *Sedgw. Dam.*, § 1199.

The cost of restoring an existing use may also be proved where it appears that the restoration is necessary to the exercise of a public franchise which the condemning party has no lawful right to destroy. It is on this ground that in a railroad, or street crossing of railroad tracks, the cost of adjusting the existing tracks to a change of grade made necessary by the crossing, supplies the rule of damages. In the case of *Massachusetts Central Railroad Co.* v. *Boston, &c., Railroad*, 121 *Mass.* 124, Mr. Justice Gray said that "damages could be allowed for changes in the surface absolutely required by law, or, in fact, necessary to be made by the corporation injured in order to accommodate its own land to the new conditions." But here no present public duty to lay more tracks is shown, and no clear evidence appears that they now are or ever will be necessary for the exercise of the franchise. The fact that the land taken is part of a railroad route does not, it seems to me, entitle the owner to more than just compensation, measured by the usual standard. The restrictions on the condemnation of a railroad route are imposed solely for the benefit of the public; the private right of the railroad company has no sanctity, and the company "occupies no higher ground than a common landowner." *Morris and Essex Railroad* v. *Central Railroad*, 2 *Vroom* 205, 214; *Pennsylvania S. V. Railroad* v. *Philadelphia, &c., Railway Co.*, 160 *Pa.* 294. Land not necessary for the franchise may be taken, even though it be acquired by condemnation, or is part of the filed route. *Railroad* v. *Belle Center*, 48 *Ohio* 273, 295; *New York and Long Branch Railway* v. *Drummond*, 17 *Vroom* 644; *Mobile Railroad* v. *Alabama Midland Railway*, 87 *Ala.* 520, 523. As matter of fact, it was not shown that the laying of the two tracks was contemplated or necessary. On the contrary, from the evidence it could not be contemplated except as a future possibility. It clearly appeared in the evidence that if the two proposed tracks should be laid,

they could be extended only about fifty feet east of the crossing of the road of the Connecting company, where the lands of another railway company not concerned in the litigation would be encountered. Their right of way beyond a width of from fifty to sixty feet ended abruptly at this point, and the two proposed tracks would end abruptly at this point, for beyond it clearly appeared that the Pennsylvania company had acquired no title. Presumably the full width might be acquired at some future time by condemnation or purchase, but the fact is the Pennsylvania company has not yet acquired it, and that indicates at once that the construction of two more tracks north of those now in use is but a remote possibility. That the laying of these two tracks is a remote possibility, is also apparent from the consideration of other facts in the case. About a quarter of a mile east of the crossing, this route, which has an authorized width of one hundred feet, ends, and the passenger line is limited to the width of four tracks, is an elevated iron structure within the line of a public street called Railroad avenue, in the city of Jersey City. Two of these four tracks are necessary to transfer passenger cars, between the car yard and the terminal station on the Hudson river; the other two are passenger main line tracks, being the continuation of those crossing the abutments already erected. A similar restriction also on the present use exists about a quarter of a mile to the west of these abutments. There the passenger route with two tracks joins the freight route, also with two tracks, and these four tracks enter the deep cut in the solid rock only wide enough for that number. It is apparent that if the two proposed tracks were constructed under present conditions they could be no more than sidings, and could not be used as main line tracks, unless substituted for those now in use for that purpose, and that the construction of these two new tracks is not necessary for the exercise of the franchise of the owning company.

It is difficult to perceive, under the facts, how the estimate of cost could have been admitted, even if it had not been offered as a fixed item of damages. As a defined and certain

item, reduced to dollars and cents, to be included as such by the jury in the damages, it would seem to be radically objectionable, and yet it was offered as such an item. It was proposed that the owning company should now be paid the large cost of these proposed abutments, not because necessary or needed now, or likely to be built soon, but because, possibly or probably, they might be necessary at some future time; but no period was attempted to be fixed in the evidence within which that time would arrive; and without that element it would have been impossible for the jury to estimate what sum should be allowed, which, if invested, would realize the cost of the abutments where needed. The jury could not fix the time within which the erection would be necessary, nor could they determine the character of the structure which should be made the basis of the cost of future use. The offer called for additional abutments north of those under the present tracks, and if the owning company could select this plan as the mode of future use on which to base an estimate of damages, then they could select any other plan and prove its cost. It is at their discretion to erect a building there, or locate their tracks at an increased elevation, or to construct a bridge with a span of sixty feet instead of thirty feet, or to construct an arch over the tracks of the Connecting company, or to adopt any other plan of crossing, however costly it may be, and include the cost as a fixed item of damage, in the verdict.

Thus, so far as the offer ruled upon in the trial court is concerned, the matter might rest here as being properly rejected, but it is difficult to understand how the offer could have been made so as to be admissible for any other purpose than that stated. The evidence rejected was, I think, not only incompetent for the purpose for which it was offered, but for any other purpose in the cause.

If such estimates can be admitted, it would follow that not only in every case where the tracks of one railroad company cross under grade the tracks of another, but in every case where a highway crosses a railroad under grade, the cost may

NOVEMBER TERM, 1894.        275

*28 Vroom.*     National Docks Ry. Co. v. Penna. R. R. Co.

be proved and must be considered in fixing damages of con-structing abutments and bridges for as many tracks as the older route will contain, though, in fact, but one or two tracks may have been constructed, and no more may ever be required. No distinction can in this regard be made between highway and railroad crossings. In the case of *Morris and Essex Railroad Co.* v. *Central Railroad Co.*, 2 *Vroom* 214, the Chief Justice said : "The inconvenience to the company from the intersection of their road by the track of another company, and by the use of such track, may be greater than that occasioned the individual by the intersection of his farm or private road, but it is an injury of the same general character, the damages in both cases being equally ascertainable."

It appears to me that a fatal objection to such proof, whether offered as a measure of damage or as an aid to the jury in estimating damages is that the amount proved can bear no definite relation to the damage sustained ; it might be much less or much more. It does not meet the objection to say that the jury should allow the increased cost of adapting to the future use only when in their judgment the improvement is worth more than its cost. Such a rule would afford a most capricious measure of damage. Suppose we apply it to this case and ascertain the conclusion to which it will lead. If the proposed abutments and bridges would cost $20,000, then the jury should value the land in its imaginary improved state, and determine whether the land thus improved would be worth that sum or more to the older company, and if so, award the $20,000. If the plan proposed should be one of a higher bridge, with a span of fifty feet, involving an expense of $30,000, then if the jury should deem the investment likely to prove profitable, they should award $30,000 ; if the plan should be to construct a permanent stone arch costing $40,000, then if the jury think favorably of the investment, they would award $40,000.

Many plans of future use might be presented, every one or which might be a reasonable and profitable use of the land, but it would not follow that the increased cost of the con-

276    NEW JERSEY SUPREME COURT.

National Docks Ry. Co. v. Penna. R. R. Co.    *57 N. J. L.*

struction on such plan resulting from the taking should be assessed. Other land not taken may be applied to these uses, or other equally profitable uses of the land which would not be impaired at all by the taking, might exist.

I think the case in hand illustrates this position. Under the evidence, as I understand it, the abutments now standing are shown to have been erected some years ago by the owning company for the express purpose of connecting the freight tracks of the Pennsylvania company with the tracks of the National Docks Railway Company, or some other company, by tracks crossing the passenger yard and tracks of the former under grade. This enterprise was not completed, and the Connecting company was organized and took these abutments as a part of their route. On the completion of their railroad the land in question will be available to make this connection formerly projected at the grade of the new railroad. *Rev., p.* 932, § 111. Such use would not be impaired by the taking, but would be by the extension of the abutments. The court could not, in view of this use, for which the land in the past had been actually prepared, and which is not impaired by the taking, assume that some other use involving a large expense, would, at some day, be profitable, and would be the least expensive mode of redemption, and on these assumptions admit estimates of the probable cost thereof.

The mode of estimating damages proposed by the owning company disregards the consideration that the owning company might provide itself with many new tracks on another part of its route or lands without incurring the expense of abutments at all. The Connecting company, under its amended plan prescribed by the order of the Circuit Court, must at its own expense provide a tunnel and abutments on its route crossing under the car yard and route of the owning company for a length of five hundred and twenty-four feet, over which the Pennsylvania company may cross freely with their tracks. The space over this proposed tunnel, if occupied to its fullest capacity, could be crossed with about forty tracks. There are now in use across it about twenty-five tracks.

There are some other suggestions which arise in my mind in relation to the want of the necessity of the use of the location of the owning company. If two more tracks were necessary or convenient a very slight examinatian of this evidence shows that they could be located on the southerly portion of their route or land across the tunnel, where the cost of their construction would in no wise be enhanced by the construction of the new road. Such location might require some rearrangement of yard tracks, but there is nothing sacred about any particular arrangement of tracks, as has been decided in a suit between these parties. The older company must yield to reasonable changes in the mode of use both in its yard and on its route. *National Docks* v. *United Cos.*, 24 *Vroom* 217, 223; also, see *Pittsburg Junction Railroad* v. *Railroad Co.*, 146 *Pa.* 297, 308.

It seems to me that the court could not submit to a jury evidence establishing a rule of damage competent only by entirely ignoring all these considerations; it is not just compensation to award damages to sections of property which a consideration of the whole tract shows will not be in fact sustained. *Chambers* v. *South Chester Borough*, 140 *Pa.* 510, 523.

It is stated in the memorandum of the decision of the court in this case, that the least expensive mode of effecting the redemption of the property is the one which must be taken into account. By this, I take it is meant the improvement of the land for some valuable use, and the expense will depend on the use selected and the mode of improvement adopted for that use. The court cannot assume what that use or mode of use shall be. The court must rule on the offers of evidence when they are presented, and the court has no inspiration to determine whether the use proposed and the plan presented as proper to create that use will be the least expensive, but the court must, in order to admit the evidence of cost, assume when the owner offers to prove the cost of making any improvement on the land that this is the least expensive, and also that the property will be required for that use. I do not think that

278    NEW JERSEY SUPREME COURT.

National Docks Ry. Co. v. Penna. R. R. Co.    *57 N. J. L.*

anyone will contend that the power of the court ever could be extended so far without grave abuse.

Assuming its admission, the jury would not be able to determine whether the improvement in the future would be worth the cost. The jury cannot say what the abutments would cost at some future period of time. Neither the court nor the jury could determine this, and it cannot be of value in the proper determination of the amount of damage to know what some particular structure if built upon a certain site would cost now, and it is beyond question that the court and jury are to determine judicially what are now the present value of the land and the present damages sustained by the taking. *New Jersey Railroad* v. *Suydam*, 2 *Harr.* 25, 45, 47 ; see *Santa Anna* v. *Haslin*, 99 *Cal.* 538, 544.

In condemnation cases the parties whose property is taken, in order to swell damages, often enlarge upon those particular uses to which their land might in the future be devoted, and with which the taking will most seriously interfere, and ignore other uses equally valuable which are not impaired by the taking, and while these efforts on the part of the owner are entirely proper, it is the duty of the court to confine the testimony to the facts which show the availability of the property for future uses, and to exclude the evidence as to conjectural or speculative uses.

It is improper to permit estimates to be presented showing what some proposed construction on the land would cost under present conditions and what a like construction would cost under changed conditions, resulting from the taking, for the reason that compensation is to be given for what is known to be the present injury, and not for damages which may or may not be sustained in the future. *Chambers* v. *South Chester*, 140 *Pa.* 510, 522.

This doctrine appears to have been stated or approved in the case of *Massachusetts Central Railroad* v. *Boston, &c., Railroad*, 121 *Mass.* 124, where Chief Justice Gray said that the company had the like right with individual owners to damages, " taking into consideration any fences or structures

upon the land or changes in the surface *absolutely required by law or in fact necessary to be made* by the corporation injured in order to accommodate its own land to the new condition." This doctrine appears to have been approved in *Central Railroad* v. *Bayonne,* 22 *Vroom* 428, 431 ; *Flint, &c., Railroad* v. *Detroit, &c., Railroad,* 64 *Mich.* 350, 368; *Chicago and Alton Railroad* v. *Joliet Railroad,* 105 *Ill.* 388, 402, 407, and by Mr. Justice Depue in *Morris and Essex Railroad,* 9 *N. J. L. J.* 75, 78.

I think the evidence was properly rejected by the trial court, and that the judgment below should be affirmed.