## JAMES CHAMBERS v. SOUTH CHESTER BOR.

### APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF DELAWARE COUNTY.

Argued February 12, 1891—Decided March 9, 1891.

[To be reported.]

1. In assessing damages for a change in the grade of a borough street, under the act of May 24, 1878, P. L. 129, the cost of filling the plaintiff's lot and raising his buildings to bring them to the level of the new grade, cannot be allowed as part of the damages recoverable. The damage is to be measured by the change produced in the market value of the property.

2. It is not error, therefore, to refuse an offer to prove the cost of such filling and raising, made for the purpose of showing the extent of the plaintiff's damages. The courts, in recent years, have more and more closely held to the rule that witnesses must express their estimates of the money value of the injury, by contrasting the market values of the property before and after.

3. And it is proper, in such a case, to refuse a point to the effect that the plaintiff is entitled to damages for any loss in his business caused by increased difficulty of access to his property, and for the consequences of increased accumulations of water in his cellar by reason of difficulties connected with the drainage, occasioned by the change of grade.

4. All such matters as, owing to the particular character of the improvement, may affect the convenient use and future enjoyment of the property, are proper matters for consideration; but they are to be considered in comparison with the advantages, and only as they affect the market value of the land: Pittsb. etc. R. Co. v. McCloskey, 110 Pa. 436.

5. When error is assigned to the rejection of testimony, the offer refused must be embodied in the specification. A specification which does not contain the offer, nor show the sealing of an exception to its refusal, is not in compliance with the Rules of Court, even though it refer to the page of the paper-book where these appear.

Before Paxson, C. J., Sterrett, Green, Clark and Williams, JJ.

No. 279 January Term 1891, Sup. Ct.; court below, No. 33 September Term 1889, C. P.

On May 7, 1889, upon the petition of James Chambers, filed under the act of May 24, 1878, P. L. 129, viewers were ap-

pointed to assess damages occasioned by a change of the grade of Edwards street, in the borough of South Chester, in front of a lot of ground owned by the plaintiff.

The viewers having made an award, and the plaintiff having entered an appeal therefrom, an issue was framed to try the amount of damages which the plaintiff was entitled to receive from said borough, by reason of such change of grade. This issue, and similar issues in four other cases relating to the same street, were tried together on June 17, 1890, when the following facts were shown:

Prior to 1888, Edwards street remained at the natural grade of the ground. In that year the proper authorities of the borough enacted an ordinance establishing a new grade therefor, and, in pursuance of the provisions of that ordinance, caused a fill to be made in front of the plaintiff's property, raising the surface of the street to the height of about eight feet above its original surface. Upon the plaintiff's lot were a dwelling-house and a stable, that were rendered difficult of access by the change of grade. It interfered also with the drainage of the property, so as to cause water to accumulate in the stable, and also in the cellar of the dwelling.

Witnesses having testified that, in order to give the plaintiff any benefit from the change of grade on Edwards street, it would be necessary to fill up the lot and raise the buildings on it, the plaintiff, Edward Barrowclough on the stand, made the following offers:

The plaintiff offers to prove what it will cost to fill up the entire lot on a level with Edwards street.

Objected to.

By the court: Offer overruled, because it does not appear that it was a level lot formerly.[1]

Mr. Ward: The man uses it for a specific purpose. He has built his house upon it, and erected a stable, and he lives there.

By the court: Whatever it will cost to restore the place to its former convenient use you may prove: but I will not permit you to show what it will cost to fill up the whole lot, as it was not level before.

Mr. Ward: The plaintiff offers to prove that.

By the court: I will permit you to prove the difference in value in the market, between the lot as compared to what it

was before the street was graded, and what it was immediately afterward; and you must confine yourself to that, and nothing else can be given. Now just make a note of that, and go on. You may take an exception to that.[3]

I confine you now to the single point, what is the difference in the market value of that lot, unaffected by the raising of the grade, and as affected by the grade. I will confine you to that; so, the questions of filling up and grading are out of the case; exception.[2]

I have held this rule to all cases of this kind, and the Supreme Court has sustained me. You may show that the house had to be raised, but I don't think the cost will be evidence. The question is merely this: What is the difference in the market value of this property, as affected by the grading and unaffected by it?

Charles H. Ladomus, a surveyor, called by the plaintiff, was asked upon direct examination:

Q. Now, can you give me the quantity of earth, as you measured it, that would be required to fill up that lot on a level with the grade? A. I can, yes sir. I can give it to you.
Q. Give it to us then.

Objected to.

By the court: Objection sustained; exception.[4]

Samuel Lyons being upon the stand as a witness for the plaintiff, the plaintiff's counsel addressed the court as follows:

Mr. Ward: I want to ask your Honor to consider an instruction which I propose to give the witness, and it is this: That in answering the question as to the difference in market value between a date anterior to the building and a date immediately afterward, the witness has a right, as an element of the depreciation of the market value, to include in his computation any expense that will be required to put that property in as good salable condition as it was before.

By the court: I instruct the witness that he has no right to do that. Now he understands me; let him answer the question as a real estate man: What is the difference in the market value, between the value of the property as affected by the change of grade and as unaffected by it, without going into any calculations as to what it would cost to fill it up or anything else. What is the difference in the market value? Exception.[5]

Charge of Court below.

A. That I am unable to say.

At the close of the testimony, the court, CLAYTON, P. J., charged the jury in part as follows:

All that the law can do is to measure the advantages with the disadvantages. If the advantages are in excess of the disadvantages, the law makes no compensation to the ones who have been injured by the removal of the earth; but, where the disadvantages are greater than the advantages, the law declares that a jury shall assess the difference and give it to the property owners. The law, therefore, gentlemen, does not permit you to say how much it would take to fill up a hole, how much it would take to bring the surface up to grade, how much it would take to tear down a house and build up a new one, or how much it would take to build a wall along the street to keep the earth from falling in upon your lot. That is not the measure of damages. The measure of damages is the difference in value of the lot, as affected by the change, as compared with its value before the street was graded. It is the difference between its value before and immediately afterward, or as soon afterward as the effect of the grade could be ascertained.

[So you see, gentlemen, the rule of law is one easily understood by the jury; it is a sensible rule. The question now before you is, not what it will cost to fill up these lots and bring them to the level of the grade; that is not the question; for it may never be necessary to fill them up. The question is, what is the difference in the market value of these lands before the street was improved and afterward; and whatever that difference may be, if it is in favor of the landowners, that is the damage to be awarded. If, however, you find that the advantages are in excess of the disadvantages, then there is no damage; because it must be obvious to all that the making of a street at a place where it was worthless before, if it followed the natural surface of the ground, must necessarily enhance the value of the land on each side of it.] [10]   It is worth a good deal to have an established grade. The value of the ground upon a street depends very much upon an established and settled grade. . . . .

You will therefore confine yourselves, gentlemen, to the single question in issue, and by doing that you will get rid of

Charge of Court below.

many embarrassing questions in the case. The single question for your consideration is: What is the difference in the market value of these lots and pieces of ground in the market, before the establishment of this grade and unaffected by it, and the difference in value of them after the establishing of the grade and as affected by it? That is the question you will consider; and if you find that the effect of the establishing of this new grade was to add to the several properties a greater value than they had, and to benefit them more than it inflicted injury, then your verdict will be for the defendant. If you find that the effect of the establishing of this grade was to cause these several properties to suffer a greater injury than they were benefited by the new grade, then you will say how much that injury is, and award damages to the plaintiffs to that extent. . . . .

The plaintiffs request the court to charge:

1. The several plaintiffs are entitled to recover for the damages suffered by their respective properties, in consequence of the filling of Edwards street by the defendant.

Answer: I say to you that they are entitled to recover damages for the change of grade of Edwards street. The filling is only important as showing, as far as it goes, what the change of grade will be; that is all. When the work is once commenced the damages are recoverable; but the jury are not to look at the amount of work that has been done there, but they are to look at the grade that has been established and decide what the effect of the filling or grading the roadbed or streetway, as established by the ordinance, is. It is the change of *grade*, that gives the plaintiffs damages, and not the *filling*. If the filling was above grade, of course they would be entitled to damages for that; for that would be a new change of grade if it was authorized by the borough. But it is the changing of the grade that is the foundation of the cause of action, in this case, and if you come to the conclusion, as I before stated, that these several plaintiffs have suffered damages greater than the benefits, from the change of grade, they are entitled to recover.[6]

2. If the jury should find that the best method of restoring the property of any of the plaintiffs to the condition it was in before the filling, would be by raising the building thereon to the present grade of the street, and filling with earth around

the same, protecting the embankment at the rear with the retaining wall, then the measure of damages would be the cost of such raising, filling-in, and building the wall, taking into account the risk that might be incurred in such a process, injury to the building therefrom and the repair of the same.

Answer: I decline to so charge you, and I say to you that is not the law. You may consider these several matters as elements in the cause, but you are not to award damages for the building of walls or the filling up of lots as special damages, or for the likelihood of injuring the building, etc. You are not to take up these separate items and award separate damages for them, and add them together and say that is the damage suffered. The law has given another rule for the measuring of damages, and that rule is as before stated and which I will now repeat. The law is this: You are to consider the market value of the property before the change and unaffected by it, and its market value with the grade and as affected by it. If the establishing of the new grade has added more value to the property than it has depreciated from it, the verdict should be for the defendant. If it has depreciated from the property more than it has added to it, the verdict should be for the plaintiffs, and the measure of damages should be the difference between its value before and its value after. Now I think that it will not be necessary for me to repeat that again. You understand it, I suppose, perfectly.⁷

3. As to the plaintiff, James Chambers, he is entitled to damage for any loss or inconvenience caused to the prosecution of his business by reason of the increased difficulty of access to his property, and for any damages that might result from consequences following increased accumulation of water in his cellar or other parts of his premises, if the jury find that such consequences were caused or aggravated by the filling of said street.

Answer: I decline to so charge you. Loss of his business has nothing to do with the case, unless it effects an injury to his land. That is all; and I have stated to you what injury to his land is to be considered, an injury that is over and above the benefits that he has received. Neither can I affirm the latter part of that point. If water is thrown upon his premises and lies upon his property, it is his duty to conduct the water

Charge of Court below.

away from his cellar if he can, and whatever that would cost would be his damage if that was his only claim. But you will allow full and ample damage for all these elements when you take the value before and after, and allow the difference. In doing that you get rid of all these claims, and that is the way the law lays down the rule. That is the rule.[8]

4. The only advantages that might be allowed as a set-off against the damages found for the plaintiffs, are only such advantages as are peculiar and special to the several properties, and not such as are enjoyed by these lands in common with other properties in the community.

Answer: That is affirmed as a matter of law. Of course, the building of a street is an advantage to the whole community. It must be of some special advantage to this property. If it has brought its grade up and made what were low lands and worthless lands more valuable, that is to be considered; but this property has the same right to these advantages as other properties. There is no doubt about that, and you see, gentlemen, the wisdom of the rule which the law has adopted. If you take the value of the property immediately before the establishing of the grade and unaffected by it, and then take its value immediately afterward as affected by it, it must be obvious to every reasonable man that there is no intervening time when there can be a general depression or decrease from other causes, and all these questions therefore are merely elements ; and the question of the general rise of the property or general depreciation of it from other causes cannot enter into the case, if you confine yourself to the almost imperceptible time immediately before and immediately after ; that is to say : Here is a property with no established grade ; nothing but a surface grade. What would it be worth, if it continued to remain in the same condition, and if no grades were ever established? What is it worth with the grade as established and as it would be, with the certainty that the street will be useless without a grade ? What is it worth now ? What is it worth with an established grade ? That is the question. If you find it is worth more, then there is no damage ; if you find it is worth less, then there is. Now, gentlemen, you may retire and take up the questions I have laid down, considering each case by itself and arriving at the best conclusion you can. After

Opinion of Court below.

you have arrived at your verdict, I suppose there will be no objections to your coming into court and having the prothonotary receive it and then you can be discharged.   You will take August, 1888, as the time upon which all your calculations are based.   What was it worth at the time without a grade ; what was it worth in August, 1888, with the grade ?   Now of course, you must look to the future to a certain extent, but the future can have no effect whatever upon this property, in your consideration, unless it immediately appreciates.   Now, let me explain what I mean.   Town lots that are not built upon or may never be built on, may have a value far above farm lands. Why ?   Because of their future prospect of becoming building-lots ; but that future prospect must operate upon the immediate value of the property if it is to be considered.   You may, therefore, consider the grade ; you may look at it, you may consider it as it now is, and, aided by that, you may look back to the time when the grade was laid out about August, 1888. You are to set the damage, not what it is now, but what it was then.   You may consider what the advantage of the grade as established at that time would probably be, and to aid you in arriving at that you may take things as they are now ; but you are not to consider what the property is worth to-day. The question for you is, What was it worth then ?   And, I say, what it is worth to-day may have some bearing upon what it was worth then, provided the rise in value has not been produced from other causes, or the depreciation, if such there be. If the property has advantages from other causes, the plaintiffs are entitled to that.   The time therefore, to which you will direct your attention is August, 1888 ; and, as that was the time the grade was established, the plaintiffs were entitled to their damages, if they suffered any, and you may add six per cent to that, from August, 1888, up to the present time, as a fair compensation for the withholding of the money.[9]

The jury returned a verdict in favor of the plaintiff Chambers for $50.   A rule for a new trial having been argued, the following opinion was filed, CLAYTON, P. J. :

These were five appeals from the assessment of damages by a jury of view for the change of the grade of Edwards street. The natural grade of Edwards street made it almost useless as

a thoroughfare.  Travelers could not cross the embankment of the railroad, nor could vehicles conveniently pass upon the street, because of its irregular and uneven surface.  In a word, it was a cul-de-sac, completely barred at one end by the Phila. W. & B. railroad, and with the south side of the street at least five feet higher than the other side.  To make the street conform with the general plan of the borough, and to enable travelers to cross the railroad, the grade was raised just high enough to conveniently cross the railroad, and a good wide and level street was made.  That the jury might the better judge of the weight of the testimony, they were sent to view the premises.

The only real question in the case is, whether the court was right in laying down and strictly enforcing the proper rule for the assessing or measuring the damage in such cases?

At an early stage in the trial, the attorneys were instructed as follows:  " You will be permitted to prove the difference in the market value of the ground, as compared to what it was worth before the street was graded and what it was worth immediately afterwards, and you must confine yourselves to that. I confine you now to the single point: What is the difference in the market value, unaffected by the grade, and its value as affected by it?  You may show, as an element in the case, that the house is now below the grade, and that it must be raised to be level with the street; but you cannot show the cost of raising the building."  This was the chief exception to the ruling of the court by the plaintiffs.  In the charge to the jury, this point was amplified and made more clear, but was not substantially changed.

If this ruling is correct, the verdict should stand.  The rule was early adopted and has never been much deviated from.  It has never been departed from without a great waste of time, and much inconvenience and dissatisfaction to the parties as well as the court.  No other rule has been found so satisfactory.  If plaintiffs, in such cases, were permitted to make itemized statements of all the different elements of their damages, and add the sum total as their final claim, the damages would, in many cases, amount to much more than the entire value of the whole property said to be injured.  In a case tried in this county before Judge Butler, an engineer and practical surveyor was called to prove the cost, by the yard, of filling up a lot of

Arguments.

ground to make it conform to a grade. An elaborate calculation was produced, and the cost proved to be about $2,000. How much will the lot be worth in the market after it is thus filled? asked the judge. The reply was, that it would be worth about $150 or $200!

I have carefully reviewed these cases and am of opinion that they were fairly tried and that the law was properly stated to the jury. It seems to me that the elements of damage belong more to the cross-examination than to the examination in chief. This court has applied the same rule, with marked success, to the many cases growing out of the construction of the Phila. W. & B. railroad through Delaware county.

The rule for a new trial is discharged.

—Judgment having been entered, the plaintiff took this appeal, assigning for error:

1–5. The refusal of the plaintiff's offers.[1 to 5] *

6–9. The answers to the plaintiff's points. [6 to 9]

10. The portion of the charge embraced in [ ] [10]

*Mr. William Ward,* for the appellant:

1. Our two causes of complaint are: (*a*) The exclusion of all testimony tending to show the cost of filling up the land of the plaintiff to the grade of the street: and (*b*) the exclusion of testimony to prove the cost of raising the buildings to such grade. It is manifest that the plaintiff would, at the outset, be compelled to make an expenditure that would cover the cost of these two items; but, when it was proposed to show their amount by the best testimony that could be produced,

---

* "When error is assigned to the admission or rejection of evidence, the specification must quote the full substance of the bill of exceptions, or copy the bill in immediate connection with the specification:" Rule XXIV. See Augerstein v. Jones, 139 Pa. 185; Huckestein v. Kelly, 139 Pa. 202. The first two of the specifications of error, in this case, were as follows:

1. The learned judge erred in overruling the offer of the plaintiff below to prove by the witness, Charles H. Ladomus, what it would cost to fill up the entire lot, for the reason, as stated by the learned judge, "that it did not appear that it was a level lot formerly." Appendix, page XII.

2. The learned judge erred in overruling the offer of the plaintiff to prove the cost of filling up and grading the said lot. See Appendix, page .

that of experienced mechanics who had inspected the premises, the judge excluded it in emphatic terms. The result was that other witnesses, who were familiar with real-estate values, were precluded from testifying as to the damages to this property, because they lacked the knowledge of the cost of raising and filling which the excluded testimony would have given. The court below relied upon Baltimore etc. R. Co. v. Springer, 21 W. N. 143, misconceiving and misapplying the decision in that case. It was an application of the well-established principles governing the taking of land for railroad purposes, and it was without a feature that bore resemblance to the present case, which involved a claim for consequential damages resulting from a construction outside the plaintiff's property lines.

2. The learned judge was in error, in his view that the elements of drainage, filling the lot and raising the buildings, were not proper for the consideration of the jury. When a borough constructs a culvert of insufficient capacity to carry the ordinary flow of water, and an injury results, the borough is liable: Haus v. Bethlehem Bor., 134 Pa. 12; Huddleston v. West Bellevue Bor., 111 Pa. 110. Why, then, should it not be liable for constructing a street so as to obstruct existing avenues for drainage? In railroad cases, it is proper to consider interference with established crossings, or a failure to construct the crossings required by law: East Penna. Railroad v. Hiester, 40 Pa. 53; or that the railroad makes it more difficult to rent the property: Pittsburgh etc. R. Co. v. Rose, 74 Pa. 362. It would seem reasonably to follow that evidence of increased difficulty of access, or other injurious results of the construction, would be admissible in the present case. While the difference in market value, before and after the construction, is the governing rule, it is proper to show by the witness the specific elements of computation: Danville etc. R. Co. v. Gearhart, 81* Pa. 260; Penna. etc. R. & C. Co. v. Bunnell, 81 Pa. 414. The rulings of the court deprived the plaintiff of the only substantial testimony at his command, and left the jury to found their verdict on a basis of conjecture and not fact.

*Mr. George B. Lindsay*, for the appellee :

1. An examination of the rulings of the court will show that

none of the proper " elements of damage " were excluded, but only such misleading testimony as would carry the minds of the jury into speculative and fanciful computations of damage, by raising issues upon the price of building materials, and the cost of erecting, changing, and removing buildings and filling up lots, when it had not even been shown that it was necessary for the use and enjoyment of this property that such things should be done, or that the property could not be used and enjoyed for its former purpose, or some other purpose, without such raising and filling. This court has condemned the offering of such irrelevant testimony : Bratton v. Mitchell, 3 Pa. 44.

2. The elements of damage may be considered by the jury : Danville etc. R. Co. v. Gearhart, 81* Pa. 260 ; but only as to their bearing upon the market value, and not as specific items of damage : Pittsburgh etc. R. Co. v. McCloskey, 110 Pa. 436 ; Baltimore etc. R. Co. v. Springer, 21 W. N. 143 ; and they do not include the cost of filling up lands to make them symmetrical, or the cost of changing buildings to make them more convenient, when such filling and changing may never become necessary. The difference between what the property would bring in the market before, and what after the improvement was made, is the proper measure of damages to guide a jury : Cummings v. Williamsport City, 84 Pa. 472 ; and the court below only performed its plain duty in defining it with accuracy to the jury : Phila. etc. R. Co. v. Adams, 89 Pa. 31.

OPINION, Mr. JUSTICE GREEN :

The learned judge of the court below so carefully, and with so much correctness and emphasis, laid down the rule by which the damages were to be assessed, that the jury could not possibly be mistaken as to their duty in disposing of the subject. Experience has constantly demonstrated the correctness of the old rule established in the case of Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 411, to wit: " The jury are to consider the matter just as if they were called on to value the injury at the moment when compensation could first be demanded : they are to value the injury to the *property*, without reference to the person of the owner, or the actual state of his business ; and in doing that, the only safe rule is to inquire : What would the property, unaffected by the obstruction, have sold for at the

time the injury was committed? What would it have sold for as affected by the injury? The difference is the true measure of compensation." Attempts have often been made to introduce particular items of damage into the case, such as the cost of fencing, loss of business, expense of altering buildings, the value of minerals under the surface, the danger of fire, the price of particular pieces of land in the neighborhood, and many other distinct and independent matters, in order that the damages to be recovered might be swelled unreasonably; but we have repudiated them all. More and more closely, in recent years, we have held parties to the rule that, after all things are considered which may affect the mind of the witness, he must give his estimate of the money value of the injury, by contrasting the market value of the property as it was before the injury was inflicted, with its value immediately after the injury; and the jury is instructed that the difference of these values is the measure of damage. Instances of specific rulings on this subject are East Penna. Railroad v. Hiester, 40 Pa. 53; Pittsburgh etc. R. Co. v. Patterson, 107 Pa. 461; Baltimore etc. R. Co. v. Springer, 21 W. N. 143, and Pittsburgh etc. Ry. Co. v. McCloskey, 110 Pa. 436.

It is not necessary to review these or any other of the decisions in detail. In the last of the cases above referred to, our Brother CLARK, in delivering the opinion, presented the doctrine in comprehensive, and at the same time precise terms, which are quite sufficient to dispose of this case. He said:

" Merely speculative damages cannot be allowed. The inconvenience arising from a division of the property, or from increased difficulty of access, the burden of increased fencing, the ordinary danger from accidental fires to the fences, fields, or farm buildings, not resulting from negligence, and generally all such matters as, owing to the particular location of the road, may affect the convenient use and future enjoyment of the property, are proper matters for consideration; but they are to be considered in comparison with the advantages, only as they affect the market value of the land. The jury cannot include in the verdict a fund to cover the costs of fencing, or to provide an indemnity against losses by fire, or casualties to the cattle and stock upon the farm. Such assessments must necessarily be purely speculative, as the matters thus sought to

be provided against are in their nature altogether ideal and fanciful."

And so, here, the plaintiff sought to prove how much it would cost to fill up his lot to the level of the changed grade of the street, and asked that the cost of such filling, as well as the cost of raising the building and erecting retaining walls to hold the earth filling, should be allowed as part of the damages to be recovered. The learned court below very properly rejected the offers of testimony on this subject, and refused the instruction asked for by the plaintiff's second point, saying that the law did not permit a recovery for any such matters. In the third point, the court was asked to instruct the jury that the plaintiff might recover damages for any loss or inconvenience in the prosecution of his business, caused by increased difficulty of access to his building, and for the consequences of increased water in his cellar and on his lot, occasioned by difficulties with the drainage resulting from the change of grade: all of which was refused.

To the second point the court answered: " You may consider these several matters as elements in the cause, but you are not to award damages for the building of walls or the filling up of lots as special damages, or for the likelihood of injuring the building, etc. You are not to take up these separate items, and award separate damages for them, and add them together, and say that is the damage suffered. The law has given another rule for the measuring of damages, and that rule is as before stated, and which I will now repeat. The law is this: You are to consider the market value of the property before the change, and unaffected by it, and its market value with the grade, and as affected by it. If the establishment of the new grade has added more value to the property than it has depreciated from it, the verdict should be for the defendant. If it has depreciated from the property more than it has added to it, the verdict should be for the plaintiffs, and the measure of damages should be the difference between its value before and its value after."

To the third point the court answered: " Loss of his business has nothing to do with the case, unless it effects an injury to his land. . . . . If water is thrown upon his premises and lies upon his property, it is his duty to conduct the water away

from his cellar if he can, and whatever that would cost would be his damage, if that was his only claim. But you will allow full and ample damage for all these elements when you take the value before and after, and allow the difference. In doing that, you get rid of all these claims: and that is the way the law lays down the rule."

All of this is so entirely correct, and so perfectly in accord with the decisions, that it needs no vindication at our hands. The widest latitude was allowed in permitting the witnesses to describe all the methods in which the change of grade would or might affect the value of the property, and they were all at liberty to give full effect to their views as to how and to what extent the value of the property was affected by the change of grade ; and they were allowed freely to say how much, in dollars and cents, the damage of the plaintiff was, but it was required to be expressed in the change of the market value of the property as it was before and after the change of grade was made. This is undoubtedly the correct rule, and it was properly administered by the court below.

The first five assignments of error are in violation of our rules of court. The rejected offers of testimony are not printed in any one of them, and we must search the appendix to discover what they are. It is much to be regretted that we are obliged so frequently to call attention to the careless practice which prevails so extensively in this respect. We hold ourselves at liberty at all times to reject such assignments, and we frequently do so. We should have done so in this case had it been of any consequence, but the answers to points raise the same questions, and it was therefore unnecessary.

Judgment affirmed.