Rothenberger et ux., Appellants, v. Reading City.

Argued February 12, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SADLER and SCHAFFER, JJ.

*Cyrus G. Derr,* with him *Walter B. Freed,* for appellants.

*George Eves,* special counsel for the City, with him *John G. Rothermel,* City Solicitor, and *Geo. W. Manderbach,* Assistant City Solicitor, for appellee.

OPINION BY MR. JUSTICE SADLER, March 18, 1929:

The City of Reading found it necessary to construct an impounding dam so that its water supply might be enlarged. Surveyors were employed to determine the lands affected by the proposed enterprise, which extended along a stream known as Maiden Creek for a distance of more than ten miles. For several years these

investigators continued their examinations, and the proposed taking of all that was necessary became known to the owners of land in the community. In all seventy-five farms and more than four hundred smaller tracts were damaged, and these were, from time to time, purchased, or compensation was adjusted for the loss which would be occasioned by the taking.

Rothenberger and wife owned a farm, containing about 63 acres, located some eight miles from the city, if measured by a straight line, and eleven miles by the public road. In 1923, after the city's plan had become a matter of public discussion, they plotted the property, dividing it into lots with proposed streets sketched thereon, and recorded the plan in 1924. No marks showing the intended subdivisions appeared on the land, nor were any of the proposed highways laid out upon the ground. The only buildings in existence were those used in connection with the farm house, and it was reached from the main highway by a private road a half mile in length.

No agreement could be reached between the owners and city as to the acquirement of the land, or any adjustment as to damages which would occur from the proposed interference with the waters of the creek. As a result, an ordinance was introduced directing the condemnation of the entire farm, and the filing of the necessary bond by the city, so that possession of the property could be taken. While this municipal legislation was pending, the owners conveyed a portion of the land, comprising ten of the lots, as numbered on the recorded plan, and bounded by a highway called Horse Shoe Drive, a paper street marked on the plot but not actually fixed in any way on the ground then or thereafter, and never accepted by the public for use. It may be noted that later the grantee, Muschlitz, who has at no time appeared or complained in this proceeding, transferred five of his unmarked lots to another, but this fact is immaterial in considering the rights of the parties here.

The enactment directing condemnation was finally adopted on February 10th, the day following the recording of the deed referred to. When the ordinance was presented, Rothenberger and wife were the owners of the entire tract, and the taking was of the whole farm. Thereafter the city learned that the ten lots had been transferred to Muschlitz, and found also that Mrs. Rothenberger had an interest in the farm as a tenant by entirety. To meet this situation the ordinance of February 10th was amended to add the wife as a party to the condemnation proceeding, naming her as an owner, a procedure which could have been pursued even if an issue to try the question of damages had, in the meantime, been framed (Seipel v. R. R. Co., 129 Pa. 425), and the amount of the taking was also reduced by excluding the acreage included within the ten lots deeded to Muschlitz after the presentation of the original ordinance, though recorded one day prior to its final passage. Reference was made to this land excepted, and no longer owned by Rothenberger, by repeating the description in his deed, which called for ten lots as numbered on the recorded plan already mentioned.

The husband and wife, owners named, waived the filing of a bond, and applied for the appointment of viewers to assess damages under the ordinance as amended, without objection to the manner of adding an additional party, or the exclusion of the land sold to Muschlitz from the original acreage condemned. From the award made, an appeal was taken by the city, an issue framed and trial had in the common pleas. This appeal is taken by plaintiffs from the judgment entered on the verdict rendered in their favor. They complain the amount allowed is insufficient, and that this was the result of the erroneous rejection by the trial court of the recorded plan of 1923, showing the land in question to be subdivided into many lots; and the taking of these parcels marked on the plot, forming part of a suburban development, rather than the property as a whole tract, as

it then existed on the ground, should have been considered by the jury. The statement of questions involved, as well as the two assignments of error, show the complaint is solely based on the refusal to receive in evidence this plan, which it is claimed should have been admitted because recorded, and one sale made by reference thereto. It disclosed the possible subdivision of the farm into plots which, it was asserted, might be sold separately at advantageous prices as summer bungalow sites in view of the location of the property. It was also contended that the proposed evidence was competent since the condemning ordinance excluded the land sold to Muschlitz, describing it as comprising ten numbered lots on the plan, bounded by a named but unopened driveway.

Appellants properly agree that such a paper subdivision of land is ordinarily not admissible to show the number of lots which could be laid out upon the farm appropriated, and be used as a basis for the assessment of damages for these individual units, taken or injured. The frequently cited case of Penna. S. V. R. R. Co. v. Cleary, 125 Pa. 442, 452, settled this when the court said, in part: "The jury are to value the tract of land, and that only. They are not to determine how it could best be divided into building lots, nor conjecture how fast they could be sold, nor at what price per lot. A speculator or investor in deciding what price he could afford to pay, would consider the chances and probabilities of the situation as then actually existing. A jury should do the same thing. They are not to inquire what a speculator might be able to realize out of a resale in the future, but what a present purchaser would be willing to pay for it in the condition it is now in. This is a rule that is well settled." To the same effect are the decisions in Hamory v. R. R., 222 Pa. 631, and Kleppner v. R. R. Co., 247 Pa. 605.

It is urged, however, that the plan was admissible under the special circumstances here appearing. The land

condemned was at the time of taking used as a farm, connected only by a private road with a public highway a half mile distant. It had been plotted in 1923, and the plan recorded, though none of the streets marked thereon were laid out on the ground, nor were the lots staked off. Admittedly, if the plan had been unrecorded, it could not have been considered in a proceeding such as this: Gorgas v. P., H. & P. R. R. Co., 215 Pa. 501. Even if it was, and no lots had been sold therefrom, it likewise could not be received: Hall v. D., L. & W. R. R. Co., 262 Pa. 292. But it is contended that, when a plot is of record, and any portion of it conveyed to another, the owner may not alter his dedication resulting from this act, since those who purchase lots marked thereon acquire privileges of which they cannot unwillingly be deprived (Morrow v. Traction Co., 219 Pa. 619), for private contract rights are thus established: O'Donnell v. Pittsburgh, 234 Pa. 401; Chambersburg Shoe Mfg. Co. v. C. V. R. R. Co., 240 Pa. 519. Likewise, the public acquires an interest in the streets laid out, if the same are accepted by the municipal authorities, which cannot thereafter be interfered with: Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318. Where the rights of others have attached, the plot is to be treated as part of the conveyance (Ferguson's App., 117 Pa. 426), and one interested as a lot purchaser, or one of the public, if acceptance as a highway appears, may take advantage of the plan, and offer it in evidence to establish his interest, but the mere recording of it is not in itself an irrevocable dedication. In the present case, the lots or streets were never actually marked on the ground, and if any one could claim a benefit arising it was Muschlitz, the purchaser of the ten lots, and he asserts no such right. Had the jury been told in this case that the plan must be considered as allocating part of the land to the use of others, the owners would have been injured in their claim for damages. As a result, they suffered no harm from the ruling complained of, unless the jury had also

been permitted to consider the remaining farm land as lots, and base their calculation of damages on such hypothesis, which was not permissible under our many authorities.

The alleged purpose of the offer in the present case was to show a dedication of the land for street and highway purposes, and also to define the portion of the farm already sold to Muschlitz. As to the latter there was no dispute, and as to the former the court properly held the presentation of the plan would only mislead the jury into believing that they were to consider the taking of a number of lots laid out, which they would value as such, thus making up the aggregate of damages, for that would have been the probable result if the plot had been presented to them. In concluding that it should be rejected as tending to confuse the real issue, we think no error was committed. The evident, though not avowed, intention of plaintiff was to disclose to the jury that a certain number of lots of speculative value had been taken, whereas the true measure of damages was the worth of the land condemned as a whole, taking into consideration any use for which it was reasonably available: Hall v. D., L. & W. R. R. Co., supra; Marine Coal Co. v. P., M. & Y. R. R. Co., 246 Pa. 478; Stone v. D., L. & W. R. R. Co., 257 Pa. 456. The learned court properly instructed "the market value must be based on the extent of the land, its accessibility, its character, its productive qualities, the character of the improvements, the various purposes for which it is reasonably adapted, and upon other sales in the vicinity." The two points presented by plaintiff as to the matters to be considered were both affirmed without qualification, and the jury told that in assessing the damages all market value-giving elements must be taken into account, and in deciding this question all chances and probabilities of using the property for bungalow sites, or otherwise, must be weighed, including the possibility that it might be divided into lots, though in arriving at a verdict, it could not base its cal-

culation on the number into which the land could be divided, and the separate value of all taken, thus reaching an aggregate amount, as determining the loss sustained. The owners have no reason to complain of the instructions given.

The only error assigned is the refusal to receive in evidence the recorded plan, as already noted. Had it been placed before the jury, the latter would doubtless have been influenced by the fact that a number of lots were marked on the plot, and considered the market value of each, improperly reaching a verdict based on the total subdivisions taken. To admit it would have confused the real issue, and tended to give the impression that the land was in fact divided into lots, whereas none were actually staked off. Its examination would not have aided in determining what part of the farm had already been sold, for, as to this, there was no dispute, and the tract as a whole had been the subject of personal view by the jurors, who were thus qualified by their own examination to determine the uses to which the property was adaptable. The true measure was the worth of the land at the time of taking, having in mind its availability for lots or bungalow sites, as contended for by plaintiffs, and it was correctly told to make its award on this basis. In view of the testimony submitted, it cannot be said that any proper element was withdrawn from their consideration, nor that the compensation awarded for the damages sustained was inadequate.

The judgment is affirmed.