Rothman *v.* Commonwealth, Appellant.

Argued November 30, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN and EAGEN, JJ.

reargument refused March 22, 1962.

*David E. Abrahamsen,* Deputy Attorney General, with him *Donald Blanken,* Assistant Attorney General, and *David Stahl,* Attorney General, for Commonwealth, appellant.

*Bruce E. Cooper,* with him *David S. Kohn,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, January 2, 1962:

Prior to June 2, 1958, George Rothman and Dorothy K. Rothman, the plaintiffs in this case, owned 156 acres of farmland in Lower Paxton Township, Dauphin County, with a thoroughfare known as Locust Lane, 33 feet wide, running through it. In keeping with the modern trend of attempting to convert the rural world into a residential paradise, the Rothmans engaged, in the spring of 1956, a registered surveyor to make up a plot plan, looking toward preparing their land for building purposes. By the fall of 1956, people were asking Rothman about purchasing lots on his anticipated residential domain.

Then, on June 22, 1958, the Commonwealth suddenly brought to an end the aspirations of the Rothmans with regard to their residential enterprise by condemning 2.8 acres in the heart of the locale of the enterprise, together with tidings of a widening of Locust Lane from 33 feet to 60 feet, changing its grade, installing drainage ditches, building guard rails and so on. In cutting out the widened highway, it developed that the Rothmans would have on their hands two useless triangles of earth so isolated and so shaped that they could not be utilized either for building or farming purposes.

The board of viewers appointed by the Court of Common Pleas of Dauphin County to determine what the Rothmans would suffer because of this Commonwealth highway program, awarded them $19,000. The

Commonwealth felt that the Rothmans were being over-paid for what was taken and appealed to the court of common pleas for a jury trial. The jury surprised the Commonwealth with an even higher award ($23,500) and it appealed.

It now asks for a new trial on the contention that the jury awarded the large sum since it was misled in its deliberations because the trial court allowed the plaintiffs to introduce at the trial a plan of the proposed lots with its proposed subdivision of the property. The Commonwealth charges that the trial court further erred in permitting the introduction of still another plan, which, superimposed over the first plan, revealed how the lots were affected by the proposed new highway. All this, the Commonwealth submits, gave the jury an incorrect standard by which to appraise damages and permitted them to speculate on what the proprietors lost because of non-fulfillment of their building program.

It is, of course, elementary in condemnation cases that the loss suffered by the property owner represents the difference between the market value of his land prior to the taking and the market value of the land after the taking. The property owner is not allowed to claim as damages the profits he might have gathered had he been allowed to effectuate some imaginary project for a financial bonanza. On the other hand it is only just that he be permitted to show what was the best and highest use of his land and what he lost because he was deprived of the opportunity to so use his land. The plaintiffs presented three expert witnesses who all testified that the land was most profitably suited for building purposes. One of the two Commonwealth expert witnesses confirmed the plaintiffs' position in this respect.

The Commonwealth complains that by showing the jury the plot plan they were in effect invited to regard

the affected land as already divided into subdivisions and they could then compute the damages on the cumulative value of these unit losses. This, of course, may not be done. This would be like saying that where the best possible use of certain land is the raising of chimpanzees, the jury may be permitted to speculate on how many chimpanzees can be trained each year for orbital flights.

But the Commonwealth, in point of reality, protests against something which was not done. Paradoxically it answers its own complaint when it says: "The plot plan which, ostensibly, was proof of the highest and best use of the land, was merely an outlining on a sketch of the condemned tract of a certain number of rectangles representing lots. There was no topographical data on the plan and all that it can be fairly said to have shown was that the tract, geometrically, could be subdivided into a certain number of smaller rectangles."

This, in itself, admits that the plan did not do what the Commonwealth argues it did, namely, allow the jury to cumulate damages on supposed values of individual lots. The purpose of the plan was merely to show the use to which the land was best adapted. No evidence was introduced either as to the value of the individual lots or as to the value of other lots in the area.

Nor can it be maintained that the plan was contrived only for the purpose of the trial. It is uncontradicted that the plan of lots was laid out two years prior to the time of the condemnation and long before it could be assumed that the Commonwealth intended to condemn, as it later did.

The appellant cites the case of *E. M. Kerstetter, Inc. v. Commonwealth*, 404 Pa. 168, in support of its position, but an examination of that case reveals that

it contradicts rather than supports the appellant. In *Kerstetter* this Court clearly pointed out that: "The first error is that the court admitted in evidence both the original and the revised plans of lots, allowed the jury to know the difference in number of lots before and after condemnation, and *let appellee testify to the value of nearby houses.*" (Emphasis supplied.)

There was no such testimony in the case at bar. This Court said further in *Kerstetter* that "there was no recorded plot and nothing even staked out on the ground to indicate that lot development was more than appellee's state of mind." In this case the plot plan was something more than appellees' state of mind. The plot plan was a matter of substance, it had a habitation and a name. This was demonstrated by the fact that the appellees advertised the sale of lots from this plan, they received numerous inquiries regarding the lots, and there were several negotiations with prospects—all prior to the Commonwealth's action of condemnation.

However, these substantial facts did not change the principle of law regarding the manner in which the loss sustained by the property owners was to be computed. The trial court made it as obvious as Locust Lane itself that the jury was not to be guided by the value of individual lots. It ruled out the value of the lots as irrelevant and incompetent. It said in language as transparently clear as daylight: "Now, you have seen that plan. You are not to predicate anything on it to the extent that the lots are so and so. You will recall that I kept out of evidence any specific value as to any lot. You shouldn't take that into consideration in the deliberations, you shouldn't consider that so many lots were taken, and you shouldn't consider the value of any of those lots and multiply them. That would be wrong. That isn't the way in which you reach the difference between the fair market value of the property before and after the taking."

The court also instructed the jury: "You must remember, in considering opinion evidence given by the witnesses in this case, that the testimony they gave was opinion evidence; but you must also, in considering this evidence, remember that you must value this property as a whole, and not with respect to lots, or laying out of lots, or multiplication of them, or fancied value of those lots, but you must consider the value of the property before, as unaffected by any taking, and then immediately after the taking, as affected by that taking. That is the way you get to the element of damage, and with respect to the land that has actually been taken."

It further charged: "You must consider this farm as a whole both before and after the taking. By fair market value is meant that amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell the property taking into consideration all of the uses to which the property is adapted and might in reason be applied."

Our case here is also clearly distinguishable from the case of *Penn. S.V.R. Co. v. Clearly,* 125 Pa. 442, additionally cited by the Commonwealth. In that case the trial court (perhaps inadvertently) permitted the jury to take into consideration the number of lots the tract could be divided into and the value of each lot within the tract.

And then another case relied upon by the Commonwealth, *Gorgas v. Phila. H. & P.R.R. Co.,* 215 Pa. 501, is distinguishable because the plan there held inadmissible "simply showed an unrecorded paper plan of lots which were not marked on the ground, made twelve years prior to the time of the appropriation, and hence was not evidence that the ground was adapted to building purposes or had actually been devoted to such purposes. . ."

The record clearly establishes that the lower court did not err in admitting the plan of lots in substantiation of other evidence adduced by the plaintiffs to the effect that the tract was capable of being divided into residential lots. The mere fact that further survey was required to fix the exact boundaries of the lots had no effect on the competency of the plan for the purpose introduced. The plan admittedly contained no topographical data from which the jury could determine whether a division into lots was feasible, but it is to be kept in mind that the jury viewed the property and of course heard the other evidence in court on the availability of the land for building projects.

The introduction of the second plan with its superimposition of the Commonwealth's highway was relevant and competent to show exactly what land had been taken and how the taking affected the use of the entire tract for division into lots.

We find no error in the record and the order of the Court below is, therefore,

Affirmed.

Justice ALPERN took no part in the consideration or decision of this case.

————

DISSENTING OPINION BY MR. JUSTICE COHEN:

While a party whose property has been condemned may introduce evidence to show the highest and best use of his land, and the jury can consider this use in arriving at damages, *Gilleland v. New York State Natural Gas Corporation*, 399 Pa. 181, 159 A. 2d 673 (1960), an unrecorded plot plan showing a contemplated sub-division of the condemned tract is not properly admissible in evidence to determine damages for the taking.

Only last year we held that it was reversible error for a court to admit in evidence original and revised

plans of lots which permitted the jury to know the difference in the number of lots before and after condemnation of the land. *E. M. Kerstetter, Inc. v. Commonwealth,* 404 Pa. 168, 171 A. 2d 163 (1961).

In *Kerstetter* we applied the rule first stated in *Pennsylvania Schuylkill Valley Railroad Co. v. Cleary,* 125 Pa. 442, 17 Atl. 468 (1889), that it is improper to admit evidence showing how many building lots the tract under consideration could be divided into, and what the lots would be worth separately. Moreover, the jury is to value only the tract of land, and is not to determine how it could best be divided into building lots, nor conjecture how fast they could be sold, nor at what price per lot.

The unrecorded plot plan was merely a self-serving paper hastily produced at a cost of $25 for the purpose of establishing higher damages at a future condemnation proceeding. It is simply a sketch of the condemned tract on which a number of rectangles are outlined. The plan contains no topographical data showing the terrain or configuration of the land which would indicate that the proposed use could possibly be effectuated. Similarly, there is no indication on the plan of sewage, drainage or other necessary facilities, nor do we know if the land is susceptible to the installation of such improvements. All the plan represents is an embryonic expression of the appellees' wishful thinking, and has no probative worth in establishing the value of the tract.

Consequently, even though the court below attempted by its instructions to limit the purposes for which the jury could consider its plan, its admissibility in evidence could serve only to confuse the jury. We are compounding the error in affirming this result.

I dissent.

Mr. Justice BENJAMIN R. JONES joins in this dissenting opinion.