Commonwealth of Pennsylvania, Appellant, *v.* Geraldine Fox, Appellee.

24

Argued October 7, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS and BLATT. Judge KRAMER did not participate.

*Mabel D. Sellers,* with her *Francis J. Tarquini,* for appellant.

*Cassin W. Craig,* with him, of counsel, *Wisler, Pearlstine, Talone, Craig & Garrity,* for appellee.

OPINION BY JUDGE BLATT, December 2, 1974:

Geraldine D. Fox (condemnee) purchased a 150.153 acre tract in Lower Providence Township (Township), Montgomery County in July of 1966. At the time of conveyance, recently enacted Township Ordinance (No. 74) provided for four different minimum lot size classifications:

(1) 40,000 square feet when neither public water nor municipal sanitary sewers are available.

(2) 30,000 square feet where the lot is served by public water supply but municipal sanitary sewer is unavailable.

(3) 25,000 square feet where the lot is served by both public water and municipal sanitary sewer.

(4) 18,000 square feet in sections of the township served by both public water and municipal sewers, where a subdivision plan showing layout of lots and streets, and other municipal improvements, open space, recreation areas, parks, schools, highways, and other public and community uses has been approved by the Township Board of Supervisors.

Under this fourth classification, in order to gain the required approval, the ordinance required the owner to convey to the Township open space on his tract for use as parklands, recreational areas or conservation areas.

In May of 1967 the condemnee submitted a subdivision plan to the Township which provided for the necessary open space and sought approval to subdivide into lots of 18,000 square feet, as permitted by the fourth classification. This subdivision plan was never approved by the Township.

On May 28, 1970 the Commonwealth of Pennsylvania (condemnor) filed a declaration of taking for 57.561 acres of the Fox tract for the Evansburg State Park project, and paid compensation in the amount of $140,500 to the condemnee. Viewers were appointed after a petition was filed by the condemnee, and they

made an award of $192,075 plus delay compensation. Both condemnor and condemnee appealed to the Court of Common Pleas of Montgomery County where a jury trial before Judge SCIRICA resulted in a verdict for the condemnee in the amount of $284,000. The condemnor filed a motion for a new trial and, after the motion was denied by the court below, the condemnor filed this appeal seeking a new trial.

At the trial the condemnor's two expert appraisers estimated the value of the condemned parcel at $144,000 and $149,600, respectively. The condemnee's expert, on the other hand, estimated its value at $354,500. Experts for both sides, however, agree that a five acre tract with a farmhouse and outbuildings, contained within the condemned parcel, is worth between $50,000 and $55,000. The controversy at hand, therefore, concerns the remaining unimproved portion of the tract.

It is clear under Pennsylvania case law and under the Eminent Domain Code, Act of June 22, 1964, Special Sess., P. L. 84, §603, 26 P.S. §1-603 (Supp. 1974-1975), that condemnation damages need not be based upon the use currently being made of the condemnee's property if in fact its highest and best use is shown to be for some other, more valuable purpose. *Pennsylvania Gas and Water Company v. Pennsylvania Turnpike Commission*, 428 Pa. 74, 236 A. 2d 112 (1967). The parties agree that the highest and best use of the condemned property in this case is for residential purposes. They disagree, however, as to the number of lots into which the property is capable of being subdivided under Ordinance No. 74. The condemnor asserts that the minimum lot size for subdivision of the condemned land would have been 40,000 square feet because, at the time of condemnation, the condemnee had neither water nor sewage facilities on the premises. The condemnee, on the other hand, argues that such facilities were reasonably available and that it was more realistic to value

the property as capable of being subdivided under the classification permitting an 18,000 square foot minimum lot size.

In support of his argument, the condemnee introduced the unapproved subdivision plan which had been submitted in 1967 as well as a second unapproved plan which had been submitted to the Township in 1971 for development of the remainder of the tract which was not condemned. These two plans were admitted into evidence by the trial court over the objections of counsel for the condemnor. The condemnor cites *Earl M. Kerstetter, Inc. v. Commonwealth*, 404 Pa. 168, 171 A. 2d 163 (1961), and the cases cited therein for the proposition that an unrecorded, unapproved subdivision plan is inadmissible as a matter of law. In *Rothman v. Commonwealth*, 406 Pa. 376, 178 A. 2d 605 (1962), however, the Pennsylvania Supreme Court affirmed the trial court's decision to admit such a plan where there had been no testimony as to the value of individual lots within the plan or of similar nearby lots and where the trial court's charge had directed the jury to consider the condemned land as a whole. The court in *Rothman* recognized that it would be error to permit the jury to consider the value of the condemned property as individual lots with separate values, and it is well established that the entire property should be valued as a whole and not as a sum of the values of the lots. *Rothman, supra; D'Alfonso v. Department of Transportation*, 5 Pa. Commonwealth Ct. 341, 291 A. 2d 117 (1972); *Felix v. Baldwin-Whitehall School District*, 5 Pa. Commonwealth Ct. 183, 289 A. 2d 788 (1972). In the case at hand the expert appraisers all made their estimates based upon the value of the entire condemned tract. All the comparable sales, upon which testimony was offered by the condemnee were sales of large undeveloped tracts which had merely been divided into lots but not yet resold as such. The jury, therefore, did not

receive any testimony upon which it may have valued the condemned land as a sum of individually saleable lots. We cannot conclude, therefore, that the admission of the subdivision plans was in error on the ground that testimony of individual lot sales was thereby allowed.

The admission of a subdivision plan would also have been error, of course, if the condemnee had not shown that the land was physically suitable for subdivision purposes and that that use of the land was needed in the area for those purposes. These two showings must be made by any condemnee in order to prove that condemnation damages should be based upon a use other than the present one. *Pennsylvania Gas and Water Company, supra.* As we have noted, the parties here agree that the highest and best use of the property was for residential subdivision. Testimony of witnesses at the trial indicates that the subject land was commercially ripe for development and that an adjacent tract, known as "Arcola Woods," had already gained Township approval for subdivision into lots of 18,000 square feet. Under the circumstances here, therefore, we must conclude that the 1967 plan was not so speculative as to mislead the jury in its consideration of what was the highest and best use. As for the 1971 plan, it was "relevant and competent to show exactly what land had been taken and how the taking affected the use of the entire tract for division into lots." *Rothman, supra* at 382, 178 A. 2d at 608.

The condemnor also asserts that the trial court erred in excluding a "Comprehensive Plan for Lower Providence" drawn up in 1963 by the Montgomery County Planning Commission, which was published but never adopted by the Township. This plan indicated that there would possibly be a future condemnation in the Township for the Evansburg State Park project, and the condemnor asserts that the public, therefore, had advance knowledge that a condemnation was imminent.

Even if this is true, however, and the value of the condemned property was diminished as a result, it can have no bearing on the fair market value for purposes of these proceedings.

"Any change in the fair market value prior to the date of condemnation which the condemnor or condemnee establishes was substantially due to the general knowledge of the imminence of condemnation, other than due to physical deterioration of the property within the reasonable control of the condemnee, shall be disregarded in determining fair market value." Eminent Domain Code, Act of June 22, 1964, Special Sess., P. L. 84, §604, 26 P.S. §1-604 (Supp. 1974-1975).

We would emphasize that the 1967 subdivision plan was admitted into evidence for the purpose of showing the highest and best use of the condemned land, and the fact that the condemnee may have been aware of the condemnation possibility, when the 1967 plan was submitted, cannot affect its probative value for the purpose indicated.

The trial court ruled against the condemnor's offer to have the entire Township files on the condemnee's subdivision plans of 1967 and 1971 admitted into evidence, and the condemnor complains that this, too, was in error. These files contained all of the unapproved plans as well as application forms, minutes of township meetings and correspondence, and portions thereof were admitted. The condemnor has not demonstrated how the exclusion of the other matter in the files has been prejudicial in any way. The exclusion of evidence may not be grounds for a new trial where the evidence would not have affected the verdict or where other evidence of the same fact was introduced by the party applying for the new trial. *Eldridge v. Melcher*, 226 Pa. Superior Ct. 381, 313 A. 2d 750 (1973). Moreover, insofar as those files bolster the argument that the condemnee was

aware of the Evansburg project in advance, they are not relevant.

Another basis upon which the condemnor argues for a new trial is that the trial court permitted the condemnee's expert to testify as to the sale price of other tracts in the Township. It is also asserted that the court should not have excluded testimony as to the sale price of an immediately adjacent tract five years before the condemnation, and of the Fox tract itself four years before the condemnation. Section 705(2) of the Eminent Domain Code, 26 P.S. §1-705(2) (Supp. 1974-1975), however, authorizes a qualified valuation expert to testify on direct or cross-examination in detail as to the valuation of the property on a comparable market value, and his testimony may include: "The price and other terms of any sale or contract to sell the condemned property or comparable property made within a reasonable time before or after the date of condemnation." Eminent Domain Code, Section 705(2)(i), 26 P.S. §1-705(2)(i) (Supp. 1974-1975).

The courts must decide what sales are "judicially comparable" and they consequently retain their control over the admissibility of valuation evidence, deciding on a case by case basis whether an item of evidence is probative and relevant. *Commonwealth v. 108.3 Acres of Land*, 431 Pa. 341, 246 A. 2d 124 (1968). In *Arndt v. Central Cambria School District*, 7 Pa. Commonwealth Ct. 150, 154, 298 A. 2d 682, 684 (1972), and in *Lewis v. Urban Redevelopment Authority of Pittsburgh*, 5 Pa. Commonwealth Ct. 176, 180, 289 A. 2d 774, 776 (1972), we stated: "The admissibility of such evidence is within the discretion of the trial court and should not be disturbed unless such discretion was grossly abused. B. & K., Inc. v. Commonwealth, 398 Pa. 518, 159 A. 2d 206 (1960)." The comparables offered by the condemnee's expert involved the sales of three large, nearby, undeveloped tracts all suited for residential de-

velopment. The sales were all made between May of 1968 and June of 1970. Two of the comparables had already gained the requisite Township approval to subdivide and build on 18,000 square foot lots and all three had water and sewer mains in service. While such facilities were not in actual service for the condemned property in 1970, their installation was at least foreseeable. Both parties submitted a considerable amount of evidence on the question of how close to reality actual water and sewage service was at that time. We cannot say that the trial court abused its discretion in admitting the evidence as to these comparable sales and allowing the jury to weigh its importance.

Neither did the trial court err in excluding the sale price of the Fox property itself four years before condemnation and the price of the adjacent tract five years before condemnation. The real estate market in the Township was very speculative and values were rising sharply there during the period concerned. Under the circumstances, a sale four years before condemnation could be too remote. In *Ward v. Commonwealth,* 390 Pa. 526, 136 A. 2d 309 (1957), the trial court's exclusion of evidence relating to the sale price of the condemned property five years prior to the taking was affirmed because the prior sale was too remote in a market of rapidly accelerating prices. Again, we stress that this is a matter largely within the discretion of the trial court.

The condemnor also takes issue with the trial judge's questioning directed toward one of the witnesses, an expert from the Department of Environmental Resources. The witness distinguished between a permit to build sewage pipes, which the neighboring developer of "Arcola Woods" had already obtained, and a permit to run effluent through those pipes, which he had not obtained. We see no error in the trial court's attempt to place his testimony within a practical perspective by having the

witness confirm that the second permit indeed would eventually be issued. The court's charge on this matter, to which the condemnor also takes exception, stated that a permit to cross the creek and connect to an available interceptor line had already been issued. This was technically inaccurate because only a permit to build had actually been issued, but it was harmless error because elsewhere in his charge the trial judge did indicate that connection was presently limited. This was the essential point to be made.

The condemnor takes exception to the trial court's attempt to summarize for the jury the provisions of Ordinance No. 74 and the conditions which it imposes upon those who subdivide into 18,000 square foot lots. This ordinance permits submission of plans for 18,000 square foot lots for "sections of the Township served by both public water and municipal sewers" and prohibits lots from being "used" for residential purposes "unless public water and municipal sanitary sewers are actually connected to and available for immediate use by the occupants or inhabitants of the building." The court instructed the jury that if public water and sewers were "reasonably available," the lot size could be 18,000 square feet. The ordinance clearly creates a distinction between "service" and "availability for immediate use," with "service" meaning "reasonable availability" in the sense that plans were being made by the Township to provide the facilities. Inasmuch as the owner of the adjacent property here, with virtually the same degree of access to water and sewage facilities, had applied for and received Township approval to develop on 18,000 square foot lots, the trial court was not in error in its instructions.

In response to the condemnor's final argument, we do not find that the verdict was excessive in light of the evidence. The condemnee's estimates were apparently based on the sales of "comparable" tracts which had al-

ready gained the necessary approval for smaller lot sizes. The condemnor's estimates, on the other hand, were based on sales of "comparable" tracts in neighboring townships in places where water and sewage facilities were entirely unavailable and where only lower density subdivision would be possible. The jury listened to a great deal of evidence concerning the nature and difficulty of the problems peculiar to the eventual development of the Fox tract, and in our review of the entire record, we must conclude that the value assessed by the jury was supported by the evidence and that the verdict was not excessive.

The order of the court below, therefore, is affirmed.