B & H Corporation, a/k/a Herold Manufacturing Co., Herold Sales Company, and Walter Herold, Appellants, *v.* Redevelopment Authority of the City of Scranton, Appellee.

Argued October 1, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Paul H. Price,* with him *Oliver, Price and Rhodes,* for appellants.

*Albert B. Mackarey,* for appellee.

OPINION BY JUDGE ROGERS, November 23, 1973:

The appellant, B & H Corporation, owned a parcel of land in the City of Scranton containing about 30,000 square feet on which were located six buildings used in the manufacturing of specialized mining equipment. B & H Corporation is owned by one Walter Herold and his wife. Mr. Herold designs and manufactures the equipment made at the B & H Corporation property.

The Redevelopment Authority of the City of Scranton took from the appellant a strip of land 32.5 feet deep and 160 feet long to widen an abutting street and imposed at this place a 20 foot setback for buildings. These actions of the Authority took or made unuseable about 8400 square feet of appellant's property and necessitated the construction of a new wall for one of the buildings and the removal of some machinery. Mr. Herold not only restored the wall of the building or buildings affected and moved the machinery at this location, he purchased additional land, constructed new manufacturing areas, rehabilitated others and generally rearranged the machinery and equipment within the buildings. This work cost $184,000 and this amount the appellant contended should have been awarded to it as just compensation.

At the trial before a judge without a jury experts called by the Authority testified to reasonable machinery removal costs of $27,455 and to total damages, including removal expense and before and after condemnation values, of $68,000. The court awarded total damages of $77,500.

The appellant's contention on appeal here is still that it should have been awarded the $184,000 spent on the property.

The standard of just compensation in Pennsylvania, by long established case law and more recent legislation, is the difference between fair market value before and after taking, plus, in this case, the reasonable cost

of removing machinery and equipment. Fair market value is the price which would be agreed to by a willing and informed seller and buyer. Eminent Domain Code, Act of June 22, 1964, Spec. Sess. P. L. 84, §§602, 603, 26 P.S. §§1-602, 1-603. The appellant's sole authority for its contention that the usual rule should not have been applied here and that the award should have been in an amount equal to what Mr. Herold spent in rehabilitating the property, is *Pennsylvania Gas and Water Company v. Pennsylvania Turnpike Commission*, 428 Pa. 74, 236 A. 2d 112 (1967). In that case the property condemned was land held by a water company, a public utility, as a potential reservoir site. The land in question was naturally suited for a reservoir. Our Supreme Court held that evidence of replacement and repair costs should have been admitted. Justice ROBERTS wrote for the majority:

"For more than a century it has been consistently held by this Court that in condemnation cases the measure of damages is based upon fair market value. Rothman v. Commonwealth, 406 Pa. 376, 178 A. 2d 605 (1962); Mazur v. Commonwealth, 390 Pa. 148, 134 A. 2d 669 (1957); Dyer v. Commonwealth, 396 Pa. 524, 152 A. 2d 760 (1959). Cf. Schuylkill Navigation Co. v. Thoburn, 7 S. & R. 411 (1821). More specifically, the condemnee is entitled to the difference between the fair market value before and after the taking.

"However, in spite of this settled rule, appellant seeks a somewhat unusual form of relief. If possible, the water company would like to be able to purchase another tract suitable for reservoir purposes, or in the alternative, to erect a retaining wall on their existing tract which would enable them to construct a reservoir of the same size as that originally planned. In view of the somewhat unique circumstances of this case, we feel that appellant's prayer is not without merit. The water company is a public utility with monopolistic privileges

within its own territory. Because of this, there simply does not exist a market, in the classic sense, for reservoir property. It is not traded between water companies. Furthermore, as a public utility, appellant has not only the privilege, but the duty, to supply its area with an adequate amount of water. To do this requires that it replace or repair the property taken by the turnpike; and this simply cannot be done with $72,000. Finally, appellant offered to prove that in spite of the fifty years during which the condemned tract remained unimproved, the water situation in Lackawanna County demands the construction of a new reservoir.

"Admittedly, the use of a replacement value or repair test is a sharp departure from the traditional measure of damages in condemnation cases; but it is not a form of remedy foreclosed by decisions of this Court. In McSorley v. Avalon Borough School District, 291 Pa. 252, 254, 139 Atl. 848, 849 (1927) it was stated: 'Evidence of the replacement value . . . should not have been received, *unless* the circumstances were so peculiar as to render it absolutely essential, in the interest of justice, to require its admission.' (Emphasis supplied.)

"We believe that the present case is precisely the type of situation envisioned by the McSorley court and that therefore appellant is entitled to repair or replacement value as the measure of damages. Nevertheless, we wish to make it quite clear that under normal circumstances fair market value remains the only available relief." 428 Pa. at 82-84, 236 A. 2d at 116-117. The instant case has none of the features the presence of which in *Pennsylvania Gas and Water Company, supra,* led the court to approve replacement and repair costs as the measure of just compensation. There is here no evidence that the business conducted on B & H Corporation's property could not be carried out anywhere; indeed the evidence is that Mr. Herold's products have a world market. There is, furthermore, positive evi-

dence that the buildings and the machinery here involved are ordinary industrial buildings and usual machinery, the injuries to which could be, and were, compensated for fairly by the usual rules.

Affirmed.