## Moon Township Municipal Authority Condemnation

W. *Bresnahan*, for appellant.
B. T. *Stanny*, for Pennsylvania Department of Transportation.

O'MALLEY, *J.*, January 19, 1978 — The question presented to the court by this appeal from the decision of the board of viewers is whether the replacement cost theory of valuation may be used in determining compensation to be paid a municipal owner of a water treatment plant site condemned by the Commonwealth of Pennsylvania, Department of Transportation (hereafter referred to as Penn DOT), for future construction of Traffic Route 51 in Allegheny County.

The condemnee, the Moon Township Municipal Authority (hereafter referred to as "authority"), a public authority organized and existing to supply water to the residents of Moon Township, Al-

legheny County, Pennsylvania, acquired the subject property along the banks of the Ohio River on November 28, 1958. Included in this acquisition were easements to drill and operate water wells from which water was to be pumped to an adjacent water treatment facility. Prior to the consummation of the purchase of these lands, the authority made inquiry of Penn DOT as to the likelihood of these lands being taken for a planned highway project in the area. Having been assured they would not be included, the authority proceeded with its acquisition of the site, plans and bids for the water treatment facility construction.

On January 31, 1962, Penn DOT notified the authority that proposed widening of Route 51 would in fact affect the proposed building. Accordingly, it became necessary for the authority to locate and acquire a new site for the water treatment facility, to design a plant suitable for the topography of that new site; to take new bids for the construction, to enlarge and extend the water lines from the wells a considerable distance to the new site of the treatment plant and, in general, to spend an additional and substantial sum of money to establish the new water treatment facility.

At the board of viewers hearing, Penn DOT testified as to the measure of damages using the fair market value approach, the method of valuation generally employed in Pennsylvania. It is set forth in section 602 of the Eminent Domain Code of June 22, 1964 (Spec. Sess.), P.L. 84, as amended, 26 P.S. § 1-602, defining just compensation: "Just compensation shall consist of the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining im-

mediately after such condemnation and as unaffected thereby, and such other damages as are provided in this code."

The condemnee authority, however, argued before the board of viewers and now before this court that the fair market approach was not the proper measure of damages in its case and that instead, the replacement cost approach should be used. It predicates its argument upon the facts of its situation: no market for water company land, its intention in the purchases of the subject property was to build a water treatment facility for which the subject property was uniquely suited given the adjacent location of the wells and river, and its position as being the only party in the territory, in light of the monopolistic privilege as a utility, who would be interested in and able to value the site for a water treatment plant.

In support of its position, the authority introduced the testimony of Alex Obsince, a real estate broker and appraiser, who testified that "the highest and best use" (EDC §1-603) of the subject site was a water treatment plant. Under cross-examination, he stated that the factors he considered in arriving at his determination included: (1) proximity of water supply (both river and well) to the plant; (2) unavailability of other undeveloped sites; (3) only well site in vicinity; (4) greatest economy of operation when supply and treatment are next to each other.

The authority then presented the testimony of Ronald Splay, a consulting engineer and vice president of Bankson Engineering Company, who testified that the subject site was uniquely suited for the Moon Township water treatment facility. He considered the facts that the property was the only available site between Allegheny County and

Coraopolis, all other sites being used by industrial and Coraopolis Borough Development, that the downstream sites had no stream sands which are essential in water filtration, that there would be easy maintenance and little travel time for an employe supervising the plant and the wells, that the site was in Moon Township and was the closest to the river and wells which would supply the system. He additionally stated that most of the land along the Ohio River was suitable for industrial purposes and was being utilized as such. Possible water treatment facility sites, however, included a site owned by Texaco which would be expected to wage an expensive fight against the authority if it attempted to condemn the Texaco property and a site owned by Rockwell Spring which, as a practical matter, was too narrow for the proper construction of a water treatment plant. Two other nearby sites are located in the floodplain and clearly were not desirable for the subject use. Other sites downstream with the same proximity to the water supplies did not have the natural sand and gravel because of the topography of the area necessary for the water treatment process. He stressed that the subject site was unique because of: (1) its closeness to wells for operating purposes; (2) its proximity to the existing water system; and (3) its good highway access which would eliminate the cost of building additional roads.

The condemnor Penn DOT presented no testimony.

Although it is not the usual test, Pennsylvania courts have approved the use of the replacement cost valuation where there is no other way to determine just compensation. "[E]vidence of the replacement value . . . should not [be] received unless

the circumstances were so peculiar as to render it absolutely essential, in the interest of justice, to require its admission." McSorley v. Avalon Borough School District, 291 Pa. 252, 139 Atl. 848 (1927); Pennsylvania Gas and Water Co. v. Pennsylvania Turnpike Commission, 428 Pa. 74, 236 A. 2d 112 (1967); B & H Corp. v. Redevelopment Authority of the City of Scranton, 11 Pa. Commonwealth Ct. 86, 312 A. 2d 827 (1973).

The facts of a case determine the fairness of the measure of compensation, and in the case at bar the court finds a property use which is unique and is not susceptible to just valuation by the traditional fair market approach. Accordingly, we hold that the replacment cost approach is an appropriate measure of damages for the subject property, and following the court in the Pennsylvania Gas and Water case will countenance in this case a deviation from the usual fair market valuation. Although the Pennsylvania Gas and Water case arose under the pre-1964 Eminent Domain Code law, we do not find that the code has precluded this avenue to fair compensation available under the common law. We note with approval that Snitzer in Pennsylvania Eminent Domain, the outstanding commentary on the subject, stated that "[t]he purpose of [§602 and §603 is] to broaden, not limit, the damages that a condemnee could claim . . . The Code could not, however, decrease the damages that a condemnee could constitutionally claim." (1976 Supplement, page 135, note 6.) In the case at bar considerations of fairness in compensation of the municipal authority warrant the adoption of the better of the valuation approaches for the situation presented, and hence, we find in favor of the condemnee and the use of replacement cost for his case.

## ORDER OF COURT

And now, January 19, 1978, upon the consideration of testimony, arguments and briefs, it is hereby ordered, adjudged, and decreed that the appropriate method to be used in the ascertainment of just compensation owed the condemnee in the case at bar is the replacement cost valuation.